UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.: 05-11323 MLW

|  |  |
|---|---|
| **CRYSTAL A. ATHERTON**<br>　　Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>) |
| **CITY OF BEVERLY, WILLIAM F.<br>SCANLON, JR.**, in his official and<br>individual capacity and **JOHN DUNN**,<br>in his official and individual capacity<br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF PLAINTIFF CRYSTAL A. ATHERTON
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
RELATING TO COUNTS I AND II OF HER COMPLAINT**

I.  　　INTRODUCTION

　　In this action, Plaintiff Crystal Atherton (hereinafter "Atherton") asserts a number of claims against both William F. Scanlon (hereinafter "Scanlon"), in his official and individual capacity, and the City of Beverly (hereinafter "the City"), arising out of the termination of Atherton's position as Executive Secretary for the former Mayor of the City.  In summary, as to Count I, Atherton says that the Beverly Home Rule Charter conferred a property interest in continued employment with the City of Beverly because her employment could only be terminated, by law, for "good cause" and she was entitled to a hearing under the governing Charter provisions.  Thus, the City of Beverly and Scanlon's disregard for Atherton's right to Due Process constitutes a violation of 42 U.S.C. § 1983.  Moreover, as to Count II, Scanlon has admitted that one of the main reasons why he terminated Atherton was due to her allegiance to Scanlon's predecessor.  Since the position of Secretary to the Mayor is administrative and not policymaking in nature, neither Scanlon nor the City of Beverly have a valid defense to Atherton's termination.

　　As shown herein, Atherton is entitled to Summary Judgment pursuant to Fed. R. Civ. P. 56, as no genuine issue of material fact exists and Atherton is entitled to judgment as a matter of

law.

II.   FACTS

Atherton relies upon and incorporates by reference herein Plaintiff's Local Rule 56.1 Statement of Facts, which will be referred to below as "Facts, ¶___."

III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)(concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995). Once the movant has made such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trial worthy issue. *Id*. The nonmovant "may not rest upon the mere allegations or denials of the [moving] party's pleading," and instead "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the nonmovant fails to make "a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must issue against him.

Once a party has submitted a properly supported motion for summary judgment, an

opposing party "may not rest upon mere allegations . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue for these purposes is more than a "metaphysical doubt." *Matsushita Elect. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). An issue is only genuine if "the evidence is such that a reasonable jury could return a verdict for" the plaintiffs. *Id*. "[B]rash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994) (citations omitted). Even where motive or intent is at issue, the standard "compels summary judgment if the non-moving party 'rests merely on conclusory allegations, improbable inferences, and unsupported speculation.' " *Feliciano De La Cruz v. El Conquistador Resort & Country Club*, 218 F. 3d 1, 5 (1st Cir. 2000)(*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).  Ultimately, the Court must determine at the summary-judgment stage whether the evidence presents a sufficient factual disagreement to require submission of the challenged claim or claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson,* 477 U. S. at 251-52

IV. ARGUMENT

    A. ATHERTON IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT ON THE FAILURE TO AFFORD HER DUE PROCESS AT THE TIME SHE WAS TERMINATED AS SECRETARY TO THE MAYOR

In evaluating whether a Fourteenth Amendment Due Process Clause violation occurred, the Court must determine whether Atherton had a property interest that entitled her to due process protection, and, if answering in the affirmative, must then determine what process was due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Atherton's due process claim depends on whether she held a property right in continued employment with the City of Beverly. *Board of Regents v. Roth*, 408 U.S. 564, 576-578 (1972); *Reagan v. United States*, 182 U.S. 419, 425 (1901). If she did, Defendant City of Beverly could not deprive her of this property right

without providing her with due process. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978); *Goss v. Lopez*, 419 U.S. 565, 573-574 (1975). A public employer cannot deprive its employee of a constitutionally recognized liberty interest, or of a substantial property interest in public employment, without affording the employee due process. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (holding that a public employee classified as a "civil servant" under Ohio law has a property interest in continued employment, of which the State cannot deprive him without due process). However, the Constitution does not create property interests; instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents*, 408 U.S. at 577; *see also Metivier v. Connor*, 283 F.3d 391 (1st Cir. 2002) (town accountant had no property interest in her job under town charter or Massachusetts law, for town's failure to reappoint her); *Joslyn v. Kinch*, 613 F.Supp. 1168 (R.I. 1985) (where city charter provided that dismissal of an employee who had completed his probationary period of service had to be for cause, city employee had "property interest" in his job).

Whether a public employee has a property interest in her job, job classification, or any other term or condition of employment sufficient to invoke the procedural protection of the Fourteenth Amendment depends solely upon whether the asserted property interest is enforceable under the law of the state in which the employee is employed. Consequently, "[a] property interest in employment can ... be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *see also Loudermill*, 470 U.S. at 538; *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995). In the case at bar, Atherton's right and entitlement to continued government employment stems from the Charter provisions for the City of Beverly, specifically Beverly Home Rule Charter § 8-15. (Facts, ¶ 8)

Basically, in accordance with Massachusetts law, a city's Charter is the "constitution" of

the city, containing the basic provisions that establish the form, structure, and organization of the government and the powers and duties of the various city officials. *See* Mass. G.L. c. 4, § 7, cl. (Fifth); 18 Massachusetts Practice, "Municipal Law," § 23, fourth ed.; *Mayor of Gloucester v. City Clerk of Gloucester*, 327 Mass. 460 (1951). Inherent in the power of the Charter is the tenet that the terms of a Charter will govern if there is any conflict with city ordinances. *Dos Santos v. City of Peabody*, 327 Mass. 519 (1951); *see also* Robert's Rules of Order, § 2, pg. 11, 10th ed. (2000) ("[i]n an incorporated organization, the corporate charter supersedes all its other rules . . . Nothing in the charter can be superseded by the organization itself unless the charter so provides").[1] Accordingly, Massachusetts courts have consistently required city officials and employees to follow the requirements of their city charter in the conduct of city affairs, otherwise the action taken is void, even if the city official thought that the correct process was being used. *See Capezzuto v. State Ballot Law Commission*, 407 Mass. 949 (1990) (where the mandates of a city charter are not followed and the result of such error significantly taints the process, Massachusetts courts have invalidated the results); *United States Leasing Corp. v. Chicopee,* 402 Mass. 228 (1988); *Minnie v. Chicopee*, 344 Mass. 743 (1962) ; Mayor of Holyoke v. Chief of Police of Holyoke, 328 Mass. 253 (1952); *Cape Ann Citizens Assoc. v. City Of Gloucester*, 47 Mass. App. Ct. 17 (1999); *Whalen v. Holyoke*, 13 Mass. App. Ct. 446 (1982).

In pertinent part, § 8-15 of the Beverly Home Rule Charter states that "[a]ny employee of the city, not a city officer or a department head . . . may be suspended or removed from office by the appointing authority for good cause." Furthermore, "[t]he appointing authority when removing any such person shall act in accordance with the following procedure:"

> (a)  A written notice of the intent to remove and a statement of the cause or causes therefore shall be delivered in hand or by certified mail to the last known address of the person sought to be removed.
>
> (b)  Within five (5) days of delivery of such notice, the officer or employee

---

[1] In fact, courts in this Commonwealth have recognized the supremacy of charters under Home Rule provisions over conflicting general statutes. *See Town Council of Agawam v. Town Manager of Agawam*, 20 Mass.App.Ct. 100, 103-05 (1985).

> (c) Between one (1) and ten (10) days after the public hearing is adjourned, or if the officer or employee of the city fails to request a public hearing, between six (6) and fifteen (15) days after delivery of the notice of intent to remove, the appointing authority shall take final action, either removing such person, or, notifying such person that the notice is rescinded. *Failure of the appointing authority to take any action within the time period as stated in this section shall be deemed to be a rescission of the original notice and the officer or employee shall, forthwith, be reinstated.*

(Facts, ¶ 8, § 8-15, Beverly Home Rule Charter (emphasis added)).

In interpreting a city charter (or a municipal ordinance), Massachusetts courts have used traditional rules of statutory construction. *Cohen v. Board of Water Commissioners, Fire District No. 1, South Hadley*, 411 Mass. 744, 748 (1992); *Bell v. Treasurer of Cambridge*, 310 Mass. 484, 489 (1941). In this regard, it is a well established rule of statutory construction that in determining the scope of a statute, courts first look to the statute's language and, if the language is unambiguous, and in the absence of a clearly expressed legislative intent to the contrary, that language must be regarded as conclusive. *Bronstein v. Prudential Ins. Co. of America*, 390 Mass. 701, 704 (1984). In other words, when no ambiguities exist on the face of the statute, a court should simply enforce the statute according to its terms. *Hashimi v. Kalil*, 388 Mass. 607, 610 (1983).

It is the duty of the courts to make every effort to give force and effect to "every word of a legislative enactment." *Bartlett v. Greyhound Real Estate Fin. Co.*, 41 Mass.App.Ct. 282, 289 (1996). More generally the court must strive to construe allegedly inconsistent statutes "addressing similar subject matter ... together (in order) to make 'an harmonious whole consistent with the legislative purpose,' (as well as) to avoid rendering any part of the legislation meaningless." *Healey v. Commissioner of Pub. Welfare*, 414 Mass. 18, (1992). The fundamental goal is, as always, ascertaining as best the court can the express or presumed intent of the Legislature. *Necessian v. Board of Appeal on Motor Vehicle Liability Policies and Bonds*, 46

Mass.App.Ct. 766 (1999).

Section 8-15 of the Beverly Home Rule Charter is not ambiguous and as a result the plain meaning of the provision controls. The language of § 8-15 plainly states that employees who are neither city officers,[2] members of a multiple member body, persons not subject to the provisions of the civil service law nor covered by the terms of a collective bargaining agreement which provides a different method are entitled to a hearing if timely requested. There is no contention by the City of Beverly that Atherton fits one of these exceptions. Atherton properly requested a hearing contemplated by § 8-15. By its very terms, § 8-15 states that if the appointing authority fails to take any action as requested by the employee, then the employee shall immediately be reinstated. Accordingly, at the time of Atherton's termination, the plain language of the Charter deemed her position as secretary to the Mayor as protected by the applicable provisions of the Charter. Failure to comply with the Charter meant that Atherton had a reasonable expectation that her employment would continue and as such properly possessed a due process right in a hearing and continued employment with the City of Beverly.

The City of Beverly and Scanlon are both expected to continue their reliance upon § 3-3 and § 3-4 of the Beverly Home Rule Charter as well as § 3-313 of the Beverly Revised Ordinances. (Facts, ¶¶ 5-6, 9) However, by the plain language of § 3-4 of the Beverly Home Rule Charter, the mayor may only remove a "city officer, member of a multiple member body or the head of any city department appointed by the mayor." In her position as secretary to the mayor, Atherton was neither a city officer, member of a multiple member body nor the head of any city department appointed by the mayor. Thus, the provisions of § 3-3 and § 3-4 were not applicable to Atherton and Mayor Scanlon was required to comply with the provisions of § 8-15. Moreover, the City of Beverly's continued reliance upon Ordinance § 3-313 of the Administrative Code is also mistaken as this provision is invalidated by operation of § 8-15 of the Beverly Home

---

[2] The Charter defines a "city officer" as a "person having charge of an office or department of the city who in the exercise of the powers or duties of such position exercises some portion of the sovereign power of the city." § 1-7 (e), Beverly Home Rule Charter. (Facts, ¶ 4)

Rule Charter.  The City of Beverly's failure to comply with the correct and applicable provisions of this portion of the Charter trumps Ordinance § 3-313 under the set of facts stated by Atherton in the case at bar.

In the unlikely scenario that § 3-13 and § 3-14 were applicable to Atherton's termination by Scanlon, the express language contained within § 3-13 states that "[t]he review by the mayor shall follow the procedures of section 8-15."  Thus, § 3-13 incorporates the procedures set forth in § 8-15 of the Beverly Home Rule Charter and Atherton was entitled to a hearing as prescribed therein.

Based on the preceding argument, Atherton is entitled to summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on her claim for violations of her right to due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 as set forth in Count I of her Complaint.

      B.      AS ATHERTON'S POSITION OF EXECUTIVE SECRETARY IS NOT A POLICYMAKING POSITION NEITHER THE CITY OF BEVERLY NOR MAYOR SCANLON WERE PERMITTED TO TERMINATE PLAINTIFF

In order to make a prima facie case of political discrimination a "plaintiff must show that she engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000) . This requires more than merely "juxtaposing a protected characteristic-someone else's politics-with the fact that plaintiff was treated unfairly." *Id*. (*quoting Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 58 (1st Cir.1990)).  In this regard, evidence that a plaintiff is politically active and that a defendant is aware of plaintiff's opposing views is not sufficient to meet this burden. *Rodriguez-Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998).  Instead, to prevail, a plaintiff must point to evidence in the record that would "permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *Rivera-Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994)

.

"The First Amendment protects associational rights. Incorporated with this prophylaxis is the right to be free from discrimination on account of one's political opinions or beliefs." *Galloza v. Foy*, 389 F.3d 26, 28-29 (1st Cir. 2004) (*citing LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir. 1996) ). Generally, a government employer cannot discharge public employees on the basis of their political affiliation. *Id*. (*citing Elrod v. Burns*, 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ). An exception to this rule is when "political affiliation is an 'appropriate requirement for the effective performance of the public office involved.' " *Id*. (*citing Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980) ). "[T]he Supreme Court has decreed that a public employer, as a prerequisite for discharging an employee for political reasons, must demonstrate that political affiliation is an appropriate requirement for the position in question. This means, in effect, that the employer must show that the position is confidential or policymaking in nature." *Id*. (*citing Elrod*, 427 U.S. at 362-63, 367, 96 S.Ct. 2673)).

Therefore, as an initial matter the Court must determine whether Atherton's position as secretary to the Mayor was confidential or policymaking in nature. Such a determination necessitates a two part inquiry. First, the Court must make an inquiry into the purpose of the employing agency and the role that the particular position occupies with in it. *Id*. at 29. Specifically, the Court must ascertain "whether the agency employing the plaintiff handle[s] matters potentially subject to partisan political differences," and whether the particular employee's position has th capacity to "influence the resolution of such matters." *Mendez-Palou v. Rohena-Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987) . Second, the Court must consider "whether the specific responsibilities of the position sufficiently resemble those of a policymaker or office-holder whose functions are such that party affiliation is an appropriate criterion for tenure." *Galloza*, 389 F.3d at 29 (1st Cir.2004) (*citing Mendez-Palou*, 813 F.2d at 1258)). Factors that may be considered in discerning between non-policymakers and policymakers include: the relative compensation level for the position; technical expertise required for the job;

9

supervision and control over others; authority to speak in the name of policymakers; influence of the position over programs or policy initiatives; public perception of what the position entails; the relationship of the position to elected officials, party leaders, and partisan politics; and "whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id*. (*quoting Elrod*, 427 U.S. at 368, 96 S.Ct. 2673).

The determination of whether a position is policymaking or confidential in nature does not focus on the "functions a particular occupant of the position may in fact carry out from time to time, but, rather, on the essential attributes of the position itself." *Id. (citing O'Connor v. Steeves*, 994 F.2d 905, 911 (1st Cir.1993); *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 242)). Of fundamental importance is the idea that "conditioning continued public employment on an employee's having obtained support from a particular political party violates the First Amendment because of 'the coercion of belief that necessarily flows from the knowledge that one must have a sponsor in the dominant party in order to retain one's job.' " *Rutan v. Republican Party of Illinois*, 497 U. S. 62, 70 (1990). In *Rutan*, the Court reaffirmed the heavy burden on government employers to show that the use of "patronage practices are narrowly tailored to further vital government interests." *Id.* at 74.

The Court in *Galloza*, *supra*, went on to add that a perusal of the job description for the position is the most useful starting point for determining the position's inherent attributes. Galloza, at 31.  Job descriptions with duties that are broad or open-ended generally allow for the latitude to exercise discretionary judgment (and, thus, tend to indicate that a position is policymaking in nature.) Conversely, job descriptions with duties that are narrowly circumscribed or rigidly delimited generally inhibit freedom of action (and, thus, tend to indicate that a position is not policymaking in nature). *Id*.

In the present case, the weight given to the job description contained within Ordinance 3-313 is somewhat diluted by the fact that the duties described therein also involves the position of Assistant to the Mayor, which is different from the Secretary to the Mayor.  Notwithstanding this

fact, the duties of the secretary are basically administrative in nature. Specifically, the secretary:

- takes notes at meetings, but the secretary has never otherwise attended meetings on behalf of the mayor; (Facts, ¶ 18)

- has never represented the Mayor outside of City Hall; (Facts, ¶ 18)

- does not advise the Mayor as to policy (except as to licensing board in which secretary serves as the role of clerk); (Facts, ¶ 18)

- has never been asked to influence other officials; (Facts, ¶ 18)

- completes payroll paperwork; (Facts, ¶ 18)

- answers constituent phone calls; (Facts, ¶ 18)

- pays bills; (Facts, ¶ 18)

- fills out forms when money is taken in for yard sale permits; (Facts, ¶ 18)

- provides copies of licenses to those making requests; (Facts, ¶ 18)

- sends out form letters regarding appointments/re-appointments from a template or as otherwise directed by Mayor; (Facts, ¶ 18)

- conveys messages to and from Mayor and department heads; (Facts, ¶ 18)

- does not typically sign documents as Mayor signs or she is authorized to sign his name and her initials; (Facts, ¶ 18)

- organizes and summarizes information for the Mayor's review; (Facts, ¶ 18)

- does not serve as a liason between the mayor, media, public interest groups, business and residents although listed in § 3-313. The latter was a function of the administrative assistant and Mayor Scanlon now takes care of those functions; (Facts, ¶ 19)

- does not speak on behalf of the Mayor or otherwise explain the Mayor's policies with the press other than very general information; (Facts, ¶ 18)

- files and reviews correspondence in the Mayor's office; (Facts, ¶ 18) and

- keeps the Mayor's scheduling calendar. (Facts, ¶ 18)

In addition to the above, there is no evidence that this particular secretary's position involves supervision and control over other individuals as indicated in *Elrod*. Likewise, there is

11

no evidence to support the conclusion that the public perception of the position of secretary is different from the job description contained within Ordinance § 3-313 or from the actual job duties. Far from being open-ended, the duties described in secretary's job description as well as the actual job duties are narrowly circumscribed and rigidly limited to administrative functions. In summary, there is no indication in plaintiff's job description or in the actual job duties of the secretary to support a conclusion that her position formulates policy or sufficiently relates to partisan political interests or concerns to warrant the application of the policymaker exception as set forth in *Galloza* and the Defendants have no defense to their conduct in terminating the Plaintiff.

IV.   CONCLUSION

Based on the foregoing, there is no dispute over any of the material issues of fact and pursuant to Fed. R. Civ. P. 56, Plaintiff's Motion for Partial Summary Judgment as to Liability should be allowed as a matter of law.

Respectfully Submitted,

Crystal A. Atherton

By her Attorney,

/s/ Jordan L. Shapiro
Jordan L. Shapiro
BBO#454240
Shapiro & Hender
640 Main Street
Malden, MA 02148
DATED: March 14, 2008            (781) 324-5200