UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05CV11323-MLW

CRYSTAL A. ATHERTON,

      Plaintiff,

v.

CITY OF BEVERLY, WILLIAM F.
SCANLON, Jr., in his official and
individual capacity, and JOHN DUNN, in
his official and individual capacity,

      Defendants

DEFENDANTS' RESPONSE TO
PLAINTIFF'S LOCAL RULE 56.1
STATEMENT OF FACTS

      The Defendants, City of Beverly ("City"), William F. Scanlon, Jr. ("Scanlon"), and John

Dunn ("Dunn") (collectively "the Defendants"), submit this Response to Plaintiff's Statement of

Facts pursuant to Local Rule 56.1 in support of their Opposition to the Plaintiff's Motion for

Summary Judgment.   Both the Defendants and the Plaintiff submitted Motions for Summary

Judgment, accompanied by Statements of Facts, Memoranda of Law and Exhibits.   The

Defendants' contend that the Plaintiff's statement of facts mischaracterizes the evidence and

does not support entry of judgment in favor of the Plaintiff.   Rather, the evidence as set forward

below and as provided in the Defendants' Statement of Facts supports entry of judgment for the

Defendants.[1]

---

[1] In an effort to avoid the waste of paper and resources, the Defendants support the assertions in this document by referring to the Defendants' Statement of Facts and the supporting exhibits submitted with the Defendants' Motion for Summary Judgment.  If the Court desires, the Defendants will provide additional copies of the Exhibits referred to in this document.

1.     Crystal A. Atherton ("Atherton") is the plaintiff in this matter. (Complaint, passim)
Atherton began her employment with the City as Legal Secretary/Paralegal to the City
Solicitor on February 1, 1987. (Exhibit 1, Deposition of Crystal A. Atherton, p. 11,
hereinafter "Ex. 1, Atherton, p. __") In or about June 1997, Atherton became Assistant to
the City's Purchasing Agent, and on October 28, 2002, she moved to the Mayor's Office
as Executive Secretary to Mayor Thomas Crean ("Crean"). Atherton held that position
until she was terminated in January 2004, Defendant, William F. Scanlon (hereinafter
"Mayor" or "Scanlon"). (Ex. 1, Atherton, pp. 12-13).

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this
paragraph**

2.     The City of Beverly (hereinafter "City") is a municipal corporation, duly organized under
the laws of the Commonwealth of Massachusetts. (Complaint, passim)

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this
paragraph**

3.     Scanlon is the Mayor for the City. Scanlon previously served as Mayor from 1994 until
2001. Scanlon was re-elected as Mayor and took office again in January 2004. (Exhibit 2,
Deposition of William F. Scanlon, p. 8, hereinafter "Ex. 2, Scanlon, p. __")

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this
paragraph**

4.      The voters of the City approved a Home Rule Charter ("Charter") in 1995. (Exhibit 3, A2

copy of the entire City of Beverly's Home Rule Charter is attached hereto)

**DEFENDANTS' RESPONSE** – **Defendants' do not contest the facts as stated in this**

**paragraph**

5.      Section 3-3 of the Charter provides that: "[t]he mayor shall appoint, subject to the review

of such appointments by the city council as provided in section 2-10, all city officers,

department heads and the members of multiple-member bodies for whom no other

method of appointment or selection is provided by the charter, excepting only persons

serving under the school committee, and persons serving under the city council. Except

as may otherwise be required by the civil service law, appointments made by the mayor

shall be for periods not to exceed three (3) years, provided, however, the mayor may

appoint the head of department related to the public safety for a term of not less than

three (3) nor more than five (5) years. The mayor may suspend or remove any person

appointed by the mayor in accordance with the procedure established in section 3-4. The

decision of the mayor in suspending or removing a department head shall be final. All

persons  categorized as department heads shall, subject to the consent of the mayor,

appoint all assistants, subordinates and other employees of the agency for which such

person is responsible. The department head may suspend or remove any assistant,

subordinate or other employee of the agency for which such person is responsible in

accordance with the procedures established in section 8-15. The decision of the

department head to suspend or remove any assistant, subordinate or other employee shall

be subject to review by the mayor. A person for whom a department head has determined a suspension or removal is appropriate may seek review of such determination by the mayor by filing a petition for review, in the office of the mayor, in writing, within ten (10) days following receipt of notice of such determination. The review by the mayor shall follow the procedures of section 8-15. The decision of the mayor shall be final."

(Ex. 3, Charter, Sec. 3-3)

**DEFENDANTS' RESPONSE – To the extent that this excerpt is an accurate quotation, the Defendants have not response except that the document speaks for itself.**

6.      Section 3-4 of the Charter provides, in part, that: "(a) In general: The mayor may, in writing, remove or suspend any city officer, member of a multiple member body, or the head of any city department appointed by the mayor by filing a written statement, with the city clerk, setting forth in precise detail the specific reasons for such removal or suspension. A copy of the written statement shall be delivered in hand, or mailed by certified mail, postage prepaid, to the last known address of the said city officer, member of a multiple member body, or head of a department. The said city officer, member of a multiple member body, or head of a department may make a written reply by filing such a reply statement with the city clerk, within ten (10) days following the date the statement of the mayor has been filed; but, such reply shall have no effect upon the removal or suspension unless the mayor shall so determine. The said city officer, member of a multiple member body, or head of a department may request permission to appear at a public meeting of the city council to read the written reply concerning removal or

suspension. If permission for said city officer, member of a multiple member body, or

head of a department to attend a meeting of the city council is granted for such purpose,

the mayor may attend the same meeting to read the statement of removal or suspension

filed by the mayor in the first instance. The city council shall have no authority to vote or

otherwise express its views concerning such removal or suspension." (Ex. 3, Charter,

Sec.3-4)

**DEFENDANTS' RESPONSE – To the extent that this excerpt is an accurate**

**quotation, the Defendants have not response except that the document speaks for**

**itself.**


7.      Section 5-3 of the Charter provides that "[a]ll appointments and promotions of city

officers and employees shall be made on the basis of merit and fitness demonstrated by

examination, past performance, or by other evidence of competence and suitability. Each

person appointed to fill an office or position shall be a person especially fitted by

education, training and previous work experience to perform the duties of the office or

position for which chosen." (Ex. 3, Charter, Sec. 5-3)

**DEFENDANTS' RESPONSE – To the extent that this excerpt is an accurate**

**quotation, the Defendants have not response except that the document speaks for**

**itself.**


8.      Section 8-15 of the Charter provides, in relevant part, that "[a]ny employee of the city,

not a city officer or a department head (hereafter "such person") and not subject to the

provisions of the civil service law, or covered by the terms of a collective bargaining

agreement which provides a different method, and whether appointed for a fixed or an indefinite term, may be suspended or removed from office by the appointing authority for good cause. The term "cause" shall include, but not be limited to the following: inefficiency, insubordination, conduct unbecoming the office and incapacity, other than temporary illness . . . The appointing authority when removing any such person shall act in accordance with the following procedure:

(a) A written notice of the intent to remove and a statement of the cause or causes therefore shall be delivered in hand or by certified mail to the last known address of the person sought to be removed.

(b) Within five (5) days of delivery of such notice, the officer or employee of the city may request a public hearing at which such person may be represented by counsel, shall be entitled to present evidence, call witnesses and to question any witness appearing at the hearing.

(c) Between one (1) and ten (10) days after the public hearing is adjourned, or if the officer or employee of the city fails to request a public hearing, between six (6) and fifteen (15) days after delivery of the notice of intent to remove, the appointing authority shall take final action, either removing such person, or, notifying such person that the notice is rescinded. Failure of the appointing authority to take any action within the time period as stated in this section shall be deemed to be a rescission of the original notice and the officer or employee shall, forthwith, be reinstated. Nothing in this section shall be construed as granting a right to such a hearing to a person who has been appointed for a fixed term when that term of office expires and such person is note [sic] reappointed for another

term of office." (Ex. 3, Charter, Sec. 8-15)

**DEFENDANTS' RESPONSE – To the extent that this excerpt is an accurate quotation, the Defendants have not response except that the document speaks for itself.**

9.    Section 3-313 of the Ordinances entitled, "Confidential Secretary/Administrative Assistant to the Mayor," provides, in its entirety: "(a) Establishment – There shall be a Confidential Secretary/Administrative Assistant to the Mayor. (b) Mode of Appointment, Term of Office – The Confidential Secretary/Administrative Assistant to the Mayor shall be appointed by and responsible only to the Mayor. The Confidential Secretary/Administrative Assistant shall serve at the pleasure of the Mayor. (c) Authorities and Responsibilities - The Confidential Secretary/Administrative Assistant to the Mayor shall have the following duties: (1) Organize and summarize information and prepare it for the Mayor's review and action; (2) Meet with department heads regarding day-to-day business, expediting administrative interaction between the Mayor's office and City departments; (3) Serve as a officer liaison between the Mayor, the media, public interest groups, businesses and residents; (4) Be familiar with all aspects of the City government and with the functions and activities of the various offices and employees of the City; (5) Be familiar with the various services rendered by the City to its residents, in order that callers can be informed of the extent of these services and of the schedule for their performance; (6) Review all correspondence received in the office of the Mayor, and arrange for its routing and for assembling the materials needed by the Mayor to respond to all such correspondence; (7) Answer all telephone calls placed to the office,

respond in an appropriate fashion and direct as appropriate." (Ex. 4, Ordinance, Sec. 3-313)

**DEFENDANTS' RESPONSE – To the extent that this excerpt is an accurate quotation, the Defendants have not response except that the document speaks for itself.**

10.    In or about mid-December 2003, Scanlon called Atherton at home and informed her that it was his intention not to keep her in the position of Confidential Secretary to the Mayor. Scanlon asked Atherton to retire and threatened to discharge her if she refused to resign. (Ex. 1, Atherton, pp. 29-31, 72). Atherton responded that she did not wish to retire and wanted to continue working and earning money for retirement. Atherton asked Scanlon if he could assign her to the School Department or another job in the City. Atherton also told Scanlon that she did not think he had the power under the Charter to terminate her employment.(Ex. 1, Atherton, pp. 29-31, 55)

**DEFENDANTS' RESPONSE – The Defendants dispute Plaintiff's assertion that the Mayor contacted her at home and that the Mayor had any phone conversation with the Plaintiff regarding the subject matter Plaintiff's paragraph 10.   DSOF, ¶35. The Defendants, however, further contend that such conversation, even if it had occurred, is not a material issue of fact, has no bearing on the legal issues to be determined and, although in controversy, does not prevent entry of judgment in favor of the Defendants.**

11.     On or about December 17, 2003, Scanlon sent Atherton a letter via certified mail, which indicated that as of January 5, 2004, it was his intention to remove her from her position based by the Mayor. The letter offered Atherton the opportunity to resign prior to that date. (Ex. 1, Atherton, pp. 34, 55-56; Ex. 2, Scanlon, pp. 13-14; Exhibit 5, Scanlon Letter to Atherton, dated December 17, 2003, hereinafter "Ex. 5, Scanlon 12/17/03 Letter") Scanlon wrote this letter to ask Atherton to resign from her position as Executive Secretary to the Mayor and to inform her that if she did not she would be removed. (Ex. 2, Scanlon, pp. 14-15)

**DEFENDANTS' RESPONSE** – **Defendants' do not contest the facts as stated in this paragraph**


Scanlon did not send Atherton a copy of the Charter with this letter. (Ex. 2, Scanlon, p. 25)

**DEFENDANT'S RESPONSE** – **The Defendants do not dispute the above statement but note that the citation to page 25 of the deposition of William Scanlon does not support the plaintiff's assertion.**


According to the Mayor, the Executive Secretary's position was appointed by the Mayor and could be removed or changed by the Mayor, and Scanlon believed that he had the right to request Atherton's resignation and to replace her. (Ex. 2, Scanlon, pp. 14, 28, 31)

**DEFENDANTS' RESPONSE** – **Defendants' do not contest the facts as stated in this paragraph**

Scanlon did not include a reason for Atherton's removal in this letter. One of the reasons that Atherton was not hired for the position of secretary was due to her political affiliations with the previous Mayor. (Ex. 2, Scanlon, p. 22-23, 73).

**DEFENDANTS' RESPONSE – The Defendants state that the Plaintiff's characterization of the December 17, 2003 letter as a letter removing the Plaintiff mischaracterizes the letter.   In fact, the letter removing the Plaintiff is dated January 5, 2004 and states that the Mayor removed the Plaintiff to replace her with "someone of [his] own choosing and in whom [he has] faith and confidence will perform the duties of such positions in an exemplary fashion."  DSOF, ¶41.**

12.     Atherton failed to resign after Scanlon asked her to do so, which Scanlon considered to be insubordination and that was also one of the reasons that she was removed from her position. (Ex. 2, Scanlon, p. 94)

**DEFENDANTS' RESPONSE – There is no support for the Plaintiff's assertion that Mayor Scanlon considered the Plaintiff's failure to resign as insubordinate.  The Plaintiff's citation to page 94 of Mayor Scanlon's deposition makes no mention of insubordination.**

13.     On or about December 31, 2003, Atherton sent Scanlon a letter, indicating that she had received his letter, dated December 17, 2003, that she did not intend to resign, and that she did not believe that she was subject to removal under the Charter, except possibly for cause. Atherton further indicated that she had decided to take three weeks of vacation and would return to work on January 20, 2004. (Ex. 1, Atherton, p. 35; Exhibit 6, Letter from

Atherton to Scanlon, dated December 31, 2003, hereinafter "Ex. 6, Atherton 12/31/03 Letter")

**DEFENDANTS' RESPONSE – The Defendants state that the Plaintiff's letter of December 31, 2003 speaks for itself, but to the extent a response is required, the Defendants do not dispute the Plaintiff's characterization of the December 31, 2003 correspondence.**

14.    Scanlon remembers receiving Atherton's December 31, 2003 letter, reading it, and filing it, without taking any further action on her request for a hearing pursuant to § 8-15 of the Charter. (Ex. 2, Scanlon, p. 17)

**DEFENDANTS' RESPONSE – The Defendants state that the Plaintiff mischaracterizes her December 31, 2003 as a request for a hearing.   In fact, Plaintiff's December 31, 2003 correspondence does not request a hearing.   DSOF, ¶38.  Moreover, Mayor Scanlon's testimony on page 17 of his deposition, which the plaintiff cites as support for her assertion, makes no mention of any request for a hearing or any action he did or did not take in response to such a request.  Mayor Scanlon's testimony is that he read the Plaintiff's December 31, 2003 letter and filed it.   DSOF, ¶39.**

15.    On or about January 5, 2004, after taking office, Scanlon sent a letter to the City Clerk regarding the removal of Atherton from the positions of the Mayor's Confidential Secretary, in accordance with Sections 3-3 and 3-4 of the Charter and Section 3-313 of the Ordinances, and from the position of Clerk to the City's Licensing Board, in

accordance with Sections 3-3 and 3-4 of the Charter.

**DEFENDANTS' RESPONSE – The Defendants do not dispute the substance of the above statement but note that Mayor Scanlon's letter of January 5, 2004 refers to "Section 3-313 of the Administrative Code" and does not use the term "Ordinances." (Exhibit B)**

Scanlon desired to fill these positions with a person of his own choosing and in whom he had faith and confidence would perform the duties of such positions in an exemplary fashion. The letter further indicated that the removal was effective immediately. Atherton was sent a copy of this letter by certified mail. (Ex. 1, Atherton, p. 35; Ex. 2, Scanlon, pp. 28, 38-39, 92; Exhibit 7, Scanlon letter to City Clerk, dated January 5, 2004, hereinafter "Ex. 7, Scanlon 1/5/04 Letter") This letter made no reference to Section 8-15 of the Charter.

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this paragraph.**

16.    On or about January 12, 2004, Atherton sent Scanlon a letter, which indicated she had received his January 5, 2004 letter. Atherton requested a public hearing pursuant to Section 8-15 of the Charter and a hearing "as otherwise allowed or required by law." (Ex. 1, Atherton, pp. 38-39; Exhibit 8, Atherton letter to Scanlon, dated January 12, 2004, hereinafter "Ex. 8, Atherton 1/12/04 Letter")

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this paragraph.**

Atherton looked at the Charter and believed that she complied with the timeframe for requesting a hearing. (Ex. 1, Atherton, p.39)

**DEFENDANTS' RESPONSE – Defendants' do not contest the Plaintiff's "belief" that she complied with the timeframe for requesting a hearing.**

17.    In January 2004, Scanlon replaced Atherton with Linda Giallongo ("Giallongo"), who had held the Executive Secretary's job for more than 20 years prior to Atherton. (Ex. 3, Scanlon, pp. 36, 81; Ex. 9, Linda Giallongo Deposition, pp. 7-8)

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this paragraph.**

18.    As Secretary to the Mayor Scanlon, Giallongo has not attended meetings in place of the Mayor or represented the Mayor at functions. (Ex. 9, Giallongo, p. 22) Giallongo attends meetings and hearings with Scanlon to take notes. (Id.)

**DEFENDANTS' RESPONSE – Defendants' do not contest the facts as stated in this paragraph.**

Giallongo does not give advice to the Mayor other than matters involving the licensing board. (Ex. 9, Giallongo, pp. 22-24).

**DEFENDANTS' RESPONSE – There is no evidence to support the Plaintiff's assertion that Giallongo's advice is limited to matters involving the licensing board. Giallongo's testimony offered the licensing board as one example of advice she**

**provides to the Mayor, but her testimony in no way limits the scope of her advice to the Mayor as to matters only involving the licensing board. DSOF, ¶¶77-78. In fact, Giallongo's affidavit testimony clearly states that on occasion the Mayor asks her opinion on issues pending with the City and she offers her opinion and advice in response. Id. Moreover, Mayor Scanlon testified that he has "discussed City issues with [Giallongo] and listened to her opinion and counsel." Id.**

Giallongo answers the telephone and takes messages, interacts with Department Heads and City employees and communicates messages to these individuals on behalf of Scanlon, processes payroll, pays bills, files forms when she receives money, files documents, handles checks for copies and for licenses, drafts and types communications for Scanlon, types information for constituents and telephones constituents with requested information, speaks to Department Heads and other individuals, including members of the public, when they come into or telephone the Mayor's office, and sometimes signs documents for Scanlon using her initials, when she has his permission. (Ex. 9 Giallongo Dep., pp. 22-32, 43). Giallongo keeps Scanlon's calendar and schedules all of his appointments (Ex. 9 Giallongo Dep., p. 49)

**DEFENDANTS' RESPONSE – Defendants' do not contest the above are some of the job duties performed by Giallongo.**

19. The Mayor's secretary does not serve as a liason [sic] between the mayor, media, public interest groups, business and residents although this is listed a job responsibility in § 3-313. The latter was a function of the administrative assistant and Mayor Scanlon now

takes care of those functions. (Ex. 9 Giallongo Dep., p. 31)

**<u>DEFENDANTS' RESPONSE</u> – The Plaintiff mischaracterizes Giallongo's**

**testimony.  Giallongo testified that she does "deal with businessmen and residents"**

**and responds to "general question[s] for information" from the media.   Moreover,**

**Giallongo testified in her affidavit that she handles "constituent services" and is**

**responsible for addressing "citizen complaints with the Mayor" and communicating**

**the Mayor's response to the citizens.  SOF, ¶¶ 77-78.  Additionally, Giallongo**

**testified that she communicates "with the public and Department Heads, on behalf**

**of the Mayor."   <u>Id</u>.**

DEFENDANTS,

CITY OF BEVERLY,
WILLIAM F. SCANLON, and
JOHN DUNN
By their attorneys,

 _/s/   Elizabeth R. Corbo_____
David C. Jenkins (BBO# 251000)
Elizabeth R. Corbo (BBO# 640131)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007

Dated:  April 18, 2008

<u>CERTIFICATE OF SERVICE</u>

I, Elizabeth R. Corbo, certify that the above document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of those individuals who will not be served electronically.

/s/ *Elizabeth R. Corbo*

337406/60700/0580