UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05CV11323-MLW

CRYSTAL A. ATHERTON,

       Plaintiff,

v.

CITY OF BEVERLY, WILLIAM F.
SCANLON, Jr., in his official and
individual capacity, and JOHN DUNN, in
his official and individual capacity,

       Defendants

DEFENDANTS' RESPONSE TO
PLAINTIFF'S LOCAL RULE 56.1
STATEMENT OF FACTS

The Defendants, City of Beverly ("City"), William F. Scanlon, Jr. ("Scanlon"), and John

Dunn ("Dunn") (collectively "the Defendants"), submit this Response to Plaintiff's Statement of

Facts pursuant to Local Rule 56.1 in support of their Opposition to the Plaintiff's Motion for

Summary Judgment.   Both the Defendants and the Plaintiff submitted Motions for Summary

Judgment, accompanied by Statements of Facts, Memoranda of Law and Exhibits.   Plaintiff then

filed an Opposition to the Defendants' Motion for Summary Judgment and included additional

statements of "undisputed" facts pursuant to Local Rule 56.1.

In response to the Plaintiff's additional Statement of Undisputed Facts (numbered 20 –

32), the Defendants' contend that the Plaintiff's statement of facts mischaracterizes the evidence

and does not support entry of judgment in favor of the Plaintiff.   Rather, the evidence as set

forward below and as provided in the Defendants' Statement of Facts supports entry of judgment for the Defendants.[1]

_____

20.    From October 2002 until her termination in January of 2004, Atherton was employed by the City of Beverly as secretary to Mayor Thomas Crean.  Mayor Crean's term of office expired in January of 2004.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 2).

**Defendant's Response** – Admitted and further specifically stated that Mayor Crean's term of office expired upon Mayor Scanlon's swearing into office on January 5, 2004.

21.    After his election in November of 2003, (for the 2004-2005 term) then Mayor-elect William F. Scanlon (hereinafter "Scanlon"), informed Atherton over the telephone that he wanted Atherton to resign from her secretarial position.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 3).

**Defendant's Response** – Denied.  (Defendants' SOF, ¶35).  Nonetheless, the Defendants' contend that such disputed fact is not material to any of the counts in the Complaint and does not prevent the entry of judgment in favor of the Defendants.

22.    During this conversation with Scanlon, Atherton did not believe that she could be terminated under the applicable charter provisions.  Atherton informed Scanlon that she was interested in another position with the City of Beverly so that she could continue her employment and years in municipal service.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 4).

---

[1] In an effort to avoid the waste of paper and resources, the Defendants support the assertions in this document by referring to the Defendants' Statement of Facts and the supporting exhibits submitted with the Defendants' Motion for Summary Judgment.  If the Court desires, the Defendants will provide additional copies of the Exhibits referred to in this document.

**Defendant's Response** – Denied.  (Defendants' SOF, ¶35).  Nonetheless, the

Defendants' contend that such disputed fact is not material to any of the counts in the

Complaint and does not prevent the entry of judgment in favor of the Defendants.


23.    On or but December 17, 2003, Atherton received a letter from Scanlon formally asking

for her resignation.  (Exhibit 1, Affidavit of Crystal A. Atherton  ¶ 5)

**Defendant's Response** - Admitted.


24.    In response, Atherton sent a letter back to Scanlon on or about December 31, 2003, in

which she stated that she would not resign and that Section 8-15 of the City Charter prohibited

her termination except for cause.  In this letter Atherton also requested a re-assignment to

another municipal department or location.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 6).

**Defendants' Response** – Admitted, except that Atherton's letter of December 31, 2003

did not request reassignment but only stated that if the Mayor wished to re-assign

Atherton to "a different department or location" he should let her know.   (Defendants'

SOF, ¶38, Exhibit 16).


25.    On January 5, 2004, Scanlon (who had just become Mayor) notified the City Clerk that

he was being removed from his position as Secretary.  Atherton was then carbon copied on this

notification to the City Clerk.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 7).

**Defendants' Response** – Denied as the sentence appears to contain typographical errors.

The Defendants' state that the best evidence of the content of the January 5, 2004 is not

Atherton's Affidavit, but the letter itself attached.  (Defendants' SOF, Exhibit 18)

26.    In response, Atherton hand-delivered a response on January 12, 2004 to Scanlon's letter requesting her removal in which Atherton formally requested a hearing pursuant to Section 8-15 of the Beverly Home Rule Charter.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 8).

**Defendants' Response** – Admitted.

27.    Despite Atherton's request, she never received a hearing in accordance with Section 8-15 of the Beverly Home Rule Charter.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 9).

**Defendants' Response** – Defendants admit that Atherton never received a hearing as one is not required prior to termination of employment in Atherton's position of Confidential Secretary to the Mayor.   (Defendants' SOF, ¶¶7,8,20)

28.    In December of 2003, Atherton went to speak to Gerald Marcella, who was then the President of the Beverly Municipal Employees Association of City Hall, to discuss the possibility of finding another position with the City of Beverly.  He told Atherton about an open position within the Building Department, and that he would speak to the Building Department Head about her filling the position.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 10).

**Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, Atherton's conversations with a Union official, not authorized to speak or represent the City, are not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  Defendants admit that Gerald Marcella was President of the Municipal Employees Association of City Hall and further that he was not a City official or otherwise authorized to speak on behalf of the City.

29.     Atherton was later informed by Mr. Marcella that the Building Department Head did not want her to have this position with the Building Department, because of her dispute with then Mayor-Elect Scanlon.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 11).

> **Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, Atherton's conversations with a Union official, not authorized to speak or represent the City, are not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  Defendants admit that Gerald Marcella was President of the Municipal Employees Association of City Hall and further that he was not a City official or otherwise authorized to speak on behalf of the City.

30.     In or about January of 2004, Atherton spoke to Roy F. Gelineau, Jr., the City Solicitor, to request that he speak to Scanlon about continuing my employment with the City in a different position than Secretary to the Mayor, particularly the open position within the Building Department.  Atherton never heard back from Mr. Gelineau regarding my request.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 12).

> **Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.

31.     In or about September of 2004, Atherton wrote a letter to the Human Resources Department for the City of Beverly once again requesting a position of employment.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 13).

**<u>Defendants' Response</u>** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.

32.    On September 2, 2004, Atherton formally requested and was approved for a superannuation retirement with the City of Beverly.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 14).

**<u>Defendants' Response</u>** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.

33.    At the time of Atherton's termination from the City of Beverly, in her capacity as secretary, she was not a member of multiple-member body.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 15).

**<u>Defendant's Response</u>** – Denied.  As Confidential Secretary to the Mayor, Atherton also served as Clerk to the Licensing Board, which is a multiple-member body. (Defendants' SOF, ¶1).

34.    At the time of Atherton's termination from the City of Beverly, in her capacity as secretary, she was not a department head.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 16).

**<u>Defendants' Response</u>** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  It is undisputed that Atherton was

appointed by the Mayor.  As provided in Section 3-3 of the Charter and Section 3-313 of

the Ordinances, persons appointed by the Mayor could be removed by the Mayor and

Atherton served at the pleasure of the Mayor.  (Defendants' SOF, ¶¶7,8,20)

35.    At the time of her termination from the City of Beverly, in my capacity as secretary, she

was not a city official.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 17).

    **Defendants' Response** – Assuming for the purposes of summary judgment that such

    statement is true, this fact is not material to any of the issues in dispute and does not

    prevent entry of judgment in favor of the Defendants.  It is undisputed that Atherton was

    appointed by the Mayor.  As provided in Section 3-3 of the Charter and Section 3-313 of

    the Ordinances, persons appointed by the Mayor could be removed by the Mayor and

    Atherton served at the pleasure of the Mayor.  (Defendants' SOF, ¶7,8,20)

36.    Many of the functions and tasks described in Section 3-313 of the Ordinances were

assigned to the Executive Assistant/Chief of Staff to Mayor Crean, who was Robert Valliere.

Therefore, during my employment as secretary to the mayor, there was an Executive Assistant to

the Mayor, who performed some of the functions described in Ordinance Section 3-313.

(Exhibit 1, Affidavit of Crystal A. Atherton ¶ 18).

    **Defendants' Response** – Assuming for the purposes of summary judgment that such

    statement is true, this fact is not material to any of the issues in dispute and does not

    prevent entry of judgment in favor of the Defendants.  It is immaterial to the issues

    relevant to the Motions whether Mayor Crean assigned some of the responsibilities of

    Confidential Secretary to the Mayor to another employee.

37.    Accordingly, Ordinance Section 3-313 describes two positions, Executive Secretary and Administrative Assistant (or the Chief of Staff).  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 19).

> **Defendants' Response** –  Denied.   Section 3-313 of the Ordinance clearly describes only one position, specifically "Confidential Secretary/Administrative Assistant to the Mayor."   (Defendant's SOF, Exhibit 8, Section 3-313 of the Ordinances).  The Ordinance itself repeatedly refers to the position in the singular (e.g., "There shall be **a** Confidential Secretary/Administrative Assistant to the Mayor." (Emphasis added))  Id. Furthermore, as specifically provided in the Ordinances, Chief of Staff to the Mayor is a separate position, with specific job duties and is distinct from that of Confidential Secretary/Administrative Assistant to the Mayor.  See Defendants' SOF, Exhibit 12 and Attached Exhibit 37, Ordinance 3-308 "Chief of Staff")[2]

38.    During her employment as secretary to the mayor, Atherton never attended confidential meetings.  The only meetings Atherton attended involved department heads where she took minutes.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 20).

> **Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  It is immaterial whether Atherton actually performed all of the job responsibilities of the position when employed by a prior Mayor.

---

[2] Defendants' have attached additional exhibits to this document to support their responses to Plaintiff's Statement of Facts.   The attached exhibits are consecutively numbered, beginning with Exhibit 37.

39.    In fact, during the time she worked for Mayor Crean, Atherton never discussed issues with Crean related to the City in order to solicit her opinion.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 21).

**Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  It is immaterial whether Atherton actually performed all of the job responsibilities of the position when employed by a prior Mayor.

40.    Atherton presently serves as an elected member of the Beverly Retirement Board.  The Retirement Board is a separate legal entity from the City of Beverly.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 22).

**Defendants' Response** – Admitted.

41.    To her knowledge, there was no ordinance in effect from 1995 to December of 2003, that described the functions of the secretary to the Mayor.  Certainly, from 1995 to December of 2003, there were no provisions in any Ordinance which caused the secretary to serve at the pleasure or will of the Mayor.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 23).

**Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  Atherton's subjective knowledge of the City's Ordinances is immaterial.   Defendants further state that Atherton was well aware that her position of Confidential Secretary to the Mayor served at the pleasure of

the Mayor as <u>she</u> drafted such language that was codified in Section 3-313 of the Ordinances.   (Defendants' SOF, ¶¶25-26)

42.    Section 3-313 of the City of Beverly Ordinances was adopted on December 18, 2003, when it was signed by the Mayor Thomas Crean.  (Exhibit 3, Record of Beverly City Clerk indicating passage of 3-313).

   **Defendants' Response** – Admitted.

43.    Atherton did not believe that, in her capacity as secretary to the Mayor, the failure to resign when requested is insubordination.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 24).

   **Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.  Atherton's subjective belief as to what constitutes insubordination is immaterial.

44.    As of this date, the City of Beverly has refused to pay my accumulated sick leave benefits ever after she retired, as required by Section 17-47 of the Beverly Revised Ordinances.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 25).

   **Defendants' Response** – Denied.  As admitted by Atherton, she was terminated from her employment, she did not retire from employment.   (Defendants' SOF, ¶59, Exhibit 1, Atherton p. 61).  This Court has recognized that affidavits such as the plaintiff's, which **contradict prior sworn testimony are insufficient to defeat a motion for summary**

**judgment.**  Williams v. Raytheon, 45 F.Supp.2d 124, 128-129 (D.Mass 1999); Ciccone

v. US Airways Inc., 144 F.Supp.2d 30 (D.Mass. 2001).


45.     Section 17-52 of the Beverly Ordinances, which became effective in June of 1996, states

the following:

> All employees with a confidential employee status, who due to that status are
> excluded from all labor unions pursuant to M.G.L. c. 150E sec. 3, shall receive
> the same cost of living raises negotiated by the union of which they would be
> entitled to be a member if not for their confidential employee status.  Nothing in
> this ordinance shall preclude said confidential employees from receiving merit
> raises as may be recommended by their supervisor and the Mayor and
> appropriated by the City Council from time to time.  Said confidential employees
> shall be entitled to the same employee benefits enjoyed by all other employees
> under their union contracts, including but not limited to vacation pay, sick leave
> benefits, personal and funeral leave, longevity, health and welfare benefits, on the
> job injury and educational benefits.

(Exhibit 2, Beverly Ordinance 17-52).

> **Defendants' Response** – Assuming for the purposes of summary judgment that such
>
> statement is true, this fact is not material to any of the issues in dispute and does not
>
> prevent entry of judgment in favor of the Defendants.   Specifically, such Ordinance is
>
> immaterial with respect to benefits an employee is required to receive upon his or her
>
> termination.


46.     Moreover, because of Section 17-52 of the Ordinances, which permitted Atherton all the

benefits, "including but not limited to vacation pay, sick leave benefits, personal and funeral

leave, longevity, health and welfare benefits, on the job injury and educational benefits" of the

Beverly Municipal Employees Association of City Hall, Atherton was also entitled to sick leave

benefits in accordance with their Agreement with the City of Beverly.  (Exhibit 1, Affidavit of

Crystal A. Atherton ¶ 26; Exhibit 2, Beverly Ordinance 17-52).

> **Defendants' Response** – Assuming for the purposes of summary judgment that such
>
> statement is true, this fact is not material to any of the issues in dispute and does not
>
> prevent entry of judgment in favor of the Defendants.   Specifically, such Ordinance is
>
> immaterial with respect to benefits an employee is required to receive upon his or her
>
> termination.

47.    During the time she worked as secretary to the City Solicitor, when she would go to

lunch, Atherton would put the telephone answering machine or have someone else answer the

telephone.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 27).

> **Defendants' Response** – Assuming for the purposes of summary judgment that such
>
> statement is true, this fact is not material to any of the issues in dispute and does not
>
> prevent entry of judgment in favor of the Defendants.

48.    Scanlon could not have observed much of Atherton's work and her conduct at work

during the time she was at City Hall, as there was a wall between her desk and Scanlon's office.

(Exhibit 1, Affidavit of Crystal A. Atherton ¶ 28).

> **Defendants' Response** – Denied.   Defendants SOF, ¶29.  Nonetheless, for purposes of
>
> summary judgment, this statement is immaterial.

49.    To her knowledge there were no deficiencies or negative reviews placed in her personnel

file during her almost eighteen (18) years of employment with the City of Beverly.  Therefore,

she had an exemplary work record with the City of Beverly.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 29).

**Defendants' Response** – Denied.   Defendants SOF, ¶29.  Nonetheless, for purposes of summary judgment, this statement is immaterial.

50.     At the time she was terminated by Mayor Scanlon, Atherton never thought she would lose her employment with the City of Beverly.  At worst, Atherton thought she could only be transferred in accordance with the provisions of the Charter.  At a minimum, Atherton was entitled to a hearing which she never received.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 30).

**Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.

31.     When Atherton received the job as secretary to the Mayor, she was never given a fixed term for the position.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 31).

**Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.

32.     Atherton believes that, in accordance with the Beverly Municipal Employees Association of City Hall, which was in effect at the time of her termination, there was a provision for

compensatory time to be given to union employees.  (Exhibit 1, Affidavit of Crystal A. Atherton ¶ 32).

**Defendants' Response** – Assuming for the purposes of summary judgment that such statement is true, this fact is not material to any of the issues in dispute and does not prevent entry of judgment in favor of the Defendants.   Atherton's subjective belief is irrelevant.

DEFENDANTS,

CITY OF BEVERLY,
WILLIAM F. SCANLON, and
JOHN DUNN
By their attorneys,

 _/s/_  Elizabeth R. Corbo_____
David C. Jenkins (BBO# 251000)
Elizabeth R. Corbo (BBO# 640131)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007

Dated:  April 30, 2008

<u>CERTIFICATE OF SERVICE</u>

I, Elizabeth R. Corbo, certify that the above document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of those individuals who will not be served electronically.

/s/ *Elizabeth R. Corbo*

344902/60700/0580

# EXHIBIT 37

# ARTICLE 3 ADMINISTRATIVE ORGANIZATION*

(*Ord. No. 329, 12-15-03)

Section

**3-100  GENERAL PROVISIONS**
3-101  Generally
3-102  Standing Committees and Ad Hoc Committees
3-103  Appointment, Term of Office
3-104  Annual Reports
3-105  Internal Organization, Multiple Member Bodies
3-106  Time and Place of Meetings
3-107  Authority to Establish Subcommittees.
3-108  Authority of Standing Multiple Member Bodies
3-109  References to State Statutes
3-110  Eligibility for Appointment to a Multiple Member Body
3-111  Annual Reports
3-112  Administrative Mission
3-113  Supplementary Administrative assignments

**3-200  MULTIPLE MEMBER BODIES**
3-201  Council on Aging
3-202  Airport Commission
3-203  Appeals, Zoning Board of
3-204  Assessors, Board of
3-205  Beverly Golf and Tennis Club Commission
3-206  Beverly Housing Authority
3-207  Building and Other Facilities Planning and Construction Committee
3-208  Cable Advisory Committee
3-209  Cemetery Commission
3-210  Conservation Commission
3-211  Contributory Retirement Board
3-212  Cultural Council
3-213  Design Review Board
3-214  Disabilities, Commission on
3-215  Economic and Community Development Council
3-216  Emergency Management Committee
3-217  Emergency Medical Services Commission
3-218  Emergency Planning Committee
3-219  Harbor Management Authority
3-220  Hazardous Waste Oversight Committee
3-221  Health, Board of
3-222  Historic Districts Commission
3-223  Industrial Development Financing Authority

3-224  Library Trustees, Board of
3-225  Licensing Board
3-226  David S. Lynch Public Parks Fund, Trustees of
3-227  Open Space and Recreation Committee
3-228  Parking and Traffic Commission
3-229  Parks and Recreation Commission
3-230  Planning Board
3-231  Registrars of Voters, Board of
3-232  Solid Waste Management Committee
3-233  Trust Funds, Commissioners of
3-234  Veterans' Memorial Advisory Committee
3-235  Youth Activities Commission


**3-300  ADMINISTRATIVE OFFICES**
3-301  Accountant, City
3-302  Aging, Director of Council on
3-303  Airport Manager
3-304  Animals, Inspector of
3-305  Assessor, Chief
3-306  Budget/Management Analyst, City Council
3-307  Building Commissioner
3-308  Chief of Staff (to the Mayor)
3-309  Clerk, City
3-310  Clerk of Committees, City Council
3-311  Collector, City
3-312  Community Services, Director of
3-313 Confidential Secretary/Administrative Assistant to the Mayor
3-314  Constables
3-315  Dog Officer (Animal Control Officer)
3-316  Electrician, City
3-317  Emergency Management, Director of
3-318  Engineering, Director of
3-319  Fence Viewers
3-320  Fire Chief
3-321  Fire Inspector
3-322  Forest Warden
3-323  Gas Piping and Gas Appliances, Inspector of
3-324  Harbormaster
3-325  Health, Director of Public
3-326  Human Resources, Director of
3-327  Information Technology, Director of
3-328  Keeper of the Lock-up
3-329  Library Director
3-330  Measurers of Wood and Bark

3-331  Municipal Finance, Director of
3-332  Municipal Inspections, Director of
3-333  Parking Clerk
3-334  Planning and Development, Director of
3-335  Plumbing Inspector
3-336  Police Chief
3-337  Procurement Officer, Chief
3-338  Public Services, Superintendent of
3-339  Purchasing, Director of
3-340  Recreation, Director of
3-341  Shade Tree Management and Pest Control, Superintendent of
3-342  Solicitor, City
3-343  Treasurer, City
3-344  Veterans Services, Director of
3-345  Weights and Measures, Sealer of

## SECTION 3-100    GENERAL PROVISIONS

### SECTION 3-101. Generally

This part of the City code describes all standing multiple member body appointments made by the Mayor, and further delineates the manner and time of appointment and terms of appointment generally, and authorities, responsibilities and interrelationships with the other Sections of the organization. City of Beverly representatives to regional governmental boards and committees shall, unless the organic law establishing such committee provides otherwise, be appointed by the Mayor.

### SECTION 3-102. Standing Committees and Ad Hoc Committees

This part of the city ordinances lists and describes all current standing multiple member bodies of the City. Additional standing multiple member bodies of the City may be established by amendment to this portion of the city ordinances. Ordinances establishing standing multiple member bodies of the City shall specify the following: membership, term of office, authorities and responsibilities, and interrelationships with both the City Council and other agencies within the organization.

The Beverly City Council may from time to time, based upon passage by a majority vote of its membership, establish ad hoc committees to assist the City Council in carrying out the council's responsibilities. Ad hoc committees shall be limited to a particular subject area and serve only in that capacity for a specific period of time.

The Mayor, in like manner may, from time to time, establish ad hoc committees to assist the Mayor in examining any matter which would assist the Mayor in carrying out the duties and responsibilities of the office.

### SECTION 3-103. Appointment, Term of Office

The Budget/Management Analyst shall review each request which is made to the City Council by the Mayor, as provided in Beverly Home Rule Charter Section 6-7, for the transfer of funds or for a supplementary appropriation, and shall make a report to the City Council Standing Committee on Finance, including a recommendation as to the action to be taken by the City Council, before the City Council acts on the matter.

When the proposed capital improvement program is submitted to the City Council by the Mayor, as required by Beverly Home Rule Charter Section 6-8, the Budget/Management Analyst shall review the proposed capital improvement program and shall, before the same is submitted to the City Council for any action, make a report, including specific recommendations for actions to be taken by the City Council concerning the capital improvement program as seem necessary, desirable or expedient.

When the proposed annual operating budget is submitted to the City Council by the Mayor, as provided in Beverly Home Rule Charter Section 6-3, the Budget/Management Analyst shall review the proposed annual operating budget and shall, before the proposed operating budget is submitted to the City Council for any action, make a report, including recommendations of specific actions to be taken by the City Council concerning the annual operating budget and any part or parts thereof as seem necessary, desirable or expedient.

The Budget/Management Analyst shall perform such other duties as may from time to time be assigned to such office by the City Council.

## SECTION 3-307.  Building Commissioner

*(a) Establishment* - There shall be an Building Commissioner as provided in Section 3 of Chapter 143 of the General Laws and 780 CMR (Code of Massachusetts Regulations).

*(b) Mode of Appointment, Term of Office* - The Building Commissioner shall, subject to the review of the City Council as provided in Section 2-10 of the Beverly Home Rule Charter, be appointed by the Mayor and shall hold office for a term not to exceed three years and in conformity with the provisions of Section 5-8 of the Beverly Home Rule Charter. The person appointed as Building Commissioner shall have at least the qualifications as are provided in GL c. 143, s. 3. The Building Commissioner shall be a City Officer.

*(c) Authorities and Responsibilities* - The Building Commissioner shall make inspections, issue such permits and enforce such regulations and ordinances as may be required by the City or as may be required by the provisions of Chapter 143 of the General Laws or under the, so-called, state building code and may for such purposes, at all reasonable times, enter upon premises to carry out such lawful procedures.

The Building Commissioner shall serve as the zoning enforcement officer as provided in Section 7 of Chapter 40A of the General Laws.

## SECTION 3-308.  Chief of Staff (to the Mayor)

*(a) Establishment* – There shall be a Chief of Staff to the Mayor.

51

*(b) Mode of Appointment, Term of Office* – The Chief of Staff shall be appointed by and responsible only to the Mayor. The Chief of Staff shall serve at the pleasure of the Mayor.

*(c) Authorities and Responsibilities* - The Chief of Staff shall have the following duties:

(1) Represent the Mayor as liaison with the City Council;

(2) Represent the Mayor, acting only on his direction, at meetings of regional agencies, state and federal agencies, community groups, business interests and local trade and fraternal organizations, for purposes of gathering information and/or articulating the Mayor's point of view;

(3) Organize and summarize information and prepare it for the Mayor's review and action;

(4) Meet with department heads regarding day-to-day business, expediting administrative interaction between the Mayor's office and City departments;

(5) Serve as a liaison officer between the City and its residents;

(6) Be familiar with all aspects of the City government, and become familiar with the functions of the activities of the various offices and employees of the City;

(7) Be familiar with the various services rendered by the City to its residents, so that he can inform citizens of the extent of these services and of the schedule for their performance;

(8) Complete specified research assignments with close contact to the Massachusetts Municipal Association and the National League of Cities and Towns, comparing the City's problems with problems and solutions of other communities in the state and nation;

(9) Meet with the Mayor, boards and commissions in normal business meetings to explain proposals or identify means to expedite action;

(10) Work with the Clerk of Committees preparing orders and backup material for executive department initiatives and with committees to expedite support for committee deliberations;

(11) Perform other services so as to support the Mayor's role as chief executive of the City. (Rev. Ords. 1973, § 2-141)

**Civil Defense, Director of (see Director of Emergency Management)**

52