UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05CV11323-MLW

CRYSTAL A. ATHERTON, and
ROBERT W. ATHERTON,

      Plaintiff,

v.

CITY OF BEVERLY, WILLIAM F.
SCANLON JR., in his official and
individual capacity, and JOHN DUNN, in
his official and individual capacity,

      Defendants

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
<u>SUMMARY JUDGMENT</u>

I.    <u>INTRODUCTION</u>

Plaintiff, Crystal A. Atherton ("Atherton"), filed a thirteen-count complaint against

defendants, City of Beverly ("City"), William F. Scanlon, Jr. ("Scanlon"), and John Dunn

("Dunn") (collectively "the Defendants"), stemming from the termination of Atherton's at-will

employment as the Confidential Secretary to the former Mayor.  Of the original thirteen counts,

the remaining claims include:  a procedural due process violation (Count I); violations of

Atherton's First Amendment and state free speech rights (Counts III, IV and VI); violations of

Atherton's federal and state civil rights (Count V); a violation of the Wage Act (Count X); and a

claim for intentional infliction of emotional distress (Count XII).  The Defendants argue that, on

the record, no genuine issue of material fact exists to support these claims, and the Defendants

are entitled to judgment as a matter of law.  The Defendants filed a Motion for Summary

Judgment on all Counts.  Plaintiff filed a Motion for Summary Judgment limited to Counts I and

II of the Complaint.   The Defendants submit this Memorandum of Law in Opposition of the

Plaintiff's Motion for Summary Judgment.[1]

II.     FACTS & PROCEDURAL HISTORY

       The Defendants rely upon and incorporate herein the Defendants' Local Rule 56.1

Statement of Facts, filed with Defendants' Motion for Summary Judgment, which will be

referred to below as "DSOF, ¶___."

III.    ARGUMENT

       A.     Summary Judgment Standard.

       Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

law."  Fed.R.Civ.P. 56(c).  In order to prevail on summary judgment, "the non-moving party

must demonstrate the existence of a genuine issue of material fact pertaining to those issues

on which it would bear the burden of proof at trial."  Kauffman v. Puerto Rico Telephone Co.,

841 F.2d 1169, 1171 (1st Cir. 1988).  Under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987),

summary judgment is appropriate if the non-moving party has the burden of proof and "fails to

make a showing sufficient to establish the existence of an element essential to that party's case.

       B.     Atherton is Not Entitled to Summary Judgment as to Count I and Judgment Must
              Enter in Favor of the Defendants.

       In Count I, Atherton asserts a constitutional due process claim against the City and

Scanlon, averring she had a property interest in continued employment as Confidential Secretary

---

[1] As the Plaintiff's Motion for Summary Judgment is limited to Counts I and II of the Complaint, the
Defendants have not included arguments regarding the remainder of the Counts and instead refer the Court to the
Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment for arguments
supporting judgment in favor of the Defendants on all Counts of the Complaint.

that entitled her to a pre-termination hearing based upon "good cause" language in Section 8-15 in the City's Home Rule Charter ("Charter").

"In a due process claim stemming from the termination of employment, a public employee must first demonstrate that [she] has a reasonable expectation, arising out of a statute, policy, rule, or contract, that [she] will continue to be employed." Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st Cir. 2006) (internal citation omitted). When no "independent source" exists, the federal constitution offers no procedural protections. Kelley v. Action for Boston Community Development, Inc., 419 F. Supp. 511, 518 (D. Mass. 1976). State law is used to determine whether such a property interest exists. Acevedo-Feliciano, 447 F.3d at 121.

      1.      Section 8-15 of the City Charter does not Apply to Atherton and Provides No Due Process Entitlement.

Atherton's entire claim of due process is based solely on her assertion that her employment is governed by Section 8-15 of the City Charter, which provides a "just cause" standard for dismissal. Atherton's employment as Confidential Secretary to the Mayor, however, is governed by Sections 3-3 and 3-4 of the City Charter and by Sections 2-405, 2-406 and 3-313 of the City's Revised Ordinances, which provide no due process entitlement.

      a.      The City's Ordinances Negates a Property Interest in Atherton's Employment as Confidential Secretary to the Mayor.

The City's Revised Ordinances clearly establish that in the position of Confidential Secretary Atherton has no property interest in continued employment. Sections 2-405, 2-406 and 3-313 of the City's Revised Ordinances ("Ordinances") expressly allow the Mayor to "employ" a Confidential Secretary or other positions "as the Mayor deems to be in the best interest of the City." DSOF, ¶18, 20 (emphasis added). Section 3-313 details the terms of employment and expressly provides that "[t]here shall be a Confidential

Secretary/Administrative Assistant to the Mayor," who "shall be appointed by and responsible only to the Mayor" and who "shall serve at the pleasure of the Mayor." DSOF, ¶20. (emphasis added). As such, the evidence establishes that the terms of Atherton's employment as Confidential Secretary to Scanlon were governed by §3-3 of the Charter and §§2-405, 2-406, and 3-313 of the Ordinances.

These Ordinances, which specifically pertain to the position of Confidential Secretary to the Mayor, negate the plaintiff's asserted property interest in continued employment and provides that the Mayor could remove Atherton with no process required. This is consistent with Massachusetts case law that establishes that the powers to appoint and remove are executive. Bailen v. Bd. of Assessors of City of Chelsea, 241 Mass. 411, 414 (1922) (internal citation omitted). Accord City Council of Boston v. Mayor of Boston, 383 Mass. 716, 722 (1981) (noting the appointment of single officers or employees is reserved to the executive branch). "Where…a public officer is appointed during pleasure, or where the power of removal is discretionary, the power may be exercised without notice or hearing." Bailen, 241 Mass. at 414 (internal citations omitted). Accord Ventetuolo v. Burke, 596 F.2d 476, 481 (1st Cir. 1979), citing Bishop v. Wood, 426 U.S. 341, 343-347 (1976) ("A constitutionally protected property interest has not been recognized where the employee serves at the will and pleasure of the public employer.") Additionally, removal language such as "when in the judgment of the [appointing authority] the best interests of the town so requires" means "for such cause as they may deem sufficient" and requires no notice or hearing. Ray v. Mayor of Everett, 328 Mass. 305, 309-310 (1952). Furthermore, where the "language [of the Ordinance/Charter] is plain, and seems clearly to authorize the removal of the [employee] in the mode in which it has been attempted," the Court is not justified in "engrafting upon it any provisions to defeat the power that it appears to

confer." <u>Bailen</u>, 241 Mass. at 415.  "The Legislature, in creating the office, had the right to provide for its vacation in such manner as they saw fit, and in ascertaining what the manner is, we must take their language in its ordinary import."  <u>Id.</u>

Atherton asserts that the City Ordinances, which she drafted while in the position of Confidential Secretary, are not applicable as they conflict with the City Charter and the Charter language trumps any conflicting language in an Ordinance.  <u>See</u> <u>Chief of Police of Chelsea</u> v. <u>Mayor of Chelsea</u>, 21 Mass. App. Ct. 530 (1986).  While the general principle of law is correct, the Charter only trumps over <u>conflicting</u> language in an ordinance.   Where there is no conflict between the Charter language and the language of the Ordinance, both must be read together to "constitute a harmonious whole consistent with the purpose of their enactment."  <u>Id</u>. at 532.   In this instance, there is no conflict between the Charter language and that of the Ordinance which would require the Court to negate the City's duly enacted ordinances.

Section 8-15 contains general language that does not specifically identify the position of Confidential Secretary, while Section 3-313 of the City's Ordinances specifically relate to the position of Confidential Secretary.   As a general cannon of statutory construction, general language "must yield to that which is more specific."   <u>TBI, Inc.</u> v. <u>Bd. of Health of North Andover</u>, 431 Mass. 9, 18 (2000) (internal citation omitted).  In this instance, the very specific language of the Ordinances can be read consistently with the broad and general language of Section 8-15 of the Charter.   There is no basis to assert that a conflict between the two provisions exists.

Indeed, Massachusetts case law mandates that Courts must construe a city's "charter and ordinances together so that they constitute a harmonious whole consistent with the purpose of their enactment," and "a literal construction will not be adopted 'when that construction would

be inconsistent with other material provisions of the statute and would defeat the aim and object of the legislation.'"  <u>Mayor of Chelsea</u>, 21 Mass. App. Ct. at 532, *quoting* <u>Lexington</u> v. <u>Bedford</u>, 378 Mass. 562, 570 (1979).   If Atherton's argument is accepted by the Court, such would completely eviscerate Section 3-313 of the City's Ordinances.   Defendants assert that such a drastic result is not required as both Sections 3-3 and 3-4 of the City's Charter, which specifically relate to Mayoral appointments, are wholly consistent with Section 3-313 of the City Ordinances.

        b.     <u>Sections 3-3 and 3-4 of the City's Charter Govern Atherton's Employment.</u>

As specifically stated in Section 3-3 of the City Charter:

> "The mayor may suspend or remove any person appointed by the mayor in accordance with the procedure established in section 3-4."

There is no dispute that Atherton was a "person appointed by the mayor" and there is further no dispute that Mayor Scanlon utilized the process in section 3-4 of the City Charter to remove her from her position of executive secretary.    Atherton attempts to avoid the application of Section 3-3 and 3-4, by arguing that the language at the beginning of Section 3-3 limits the application of the entire section to only "city officers, department heads and the members of multiple member bodies for whom no other method of appointment or selection is provided by the charter."  For the reasons stated below, Atherton's argument and reliance upon the principle of "ejusdem generis" must fail.

The principle of statutory construction referred to as "*ejusdem generis*" generally states that general language following a recitation of more specific terms will be interpreted to apply only to other times like those specifically enumerated.   See <u>Harrison</u> v. <u>PPG Industries, Inc.</u>, 446 U.S. 578, 588, 100 S.Ct. 1889, 1895 (1980).   The principle of "*ejusdem generis*", however,

"is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." Id. *quoting* United States v. Powell, 423 U.S. 87, 91, 96 S.Ct. 316, 319 (1975). Indeed, *ejusdem generis* is not to be applied mechanistically whenever a string of terms is separated by commas," rather "[t]he doctrine seems most appropriate to a seriatim listing containing numerous terms and ending with the disputed language." Perlera v. Vining Disposal Service, Inc., 47 Mass.App.Ct. 491, 496-497 & n.8 (1999).  Unlike the language in the cases determining the application of *ejusdem generis* is appropriate, the words in Section 3-3 that Atherton contends limits the phrase "any person appointed by the mayor" are contained in a distinct and independent sentence and are not merely a chain of words separated by a comma, where application of such principle may be appropriate.

Additionally, "the principle of ejusdem generis ought not to be applied in the construction of a statute if the legislative purpose will be defeated." Commissioner of Corporations and Taxation v. Aetna Life Ins., Co., 328 Mass. 404, 410 (1952) *citing* Swift v. Board of Registrars of Voters of Quincy, 281 Mass. 271, 276.   It is clear, especially so with the enactment of the specific Ordinance language in Sections 2-405, 2-406 and 3-313, that the legislative intent of Section 3-3 of the City Charter is to allow the Mayor to remove employees that he appoints at his discretion and without a "just cause" requirement as Atherton's argument would require.

Finally, it should be noted that the First Circuit rejected the application of *ejusdem generis* when the application would make the general terms redundant, superfluous or meaningless. Ferrara & DiMercurio, Inc. v. St. Paul Mercury Insurance Co., 169 F.3d 43, 52 (1st Cir., 1999).  In examining the language of Sections 3-3 and 3-4 of the Charter, limiting the clear statement that "[t]he mayor may remove any person appointed by the mayor in accordance with the procedure established in section 3-4" to apply only to city officers, department heads

and the members of multiple member bodies would be superfluous and render the language meaningless.   As Section 3-4 of the Charter specifically includes the terms city officers, department heads and members of multiple member bodies" there would be no need to include language in Section 3-3 that simply restates the application of Section 3-4 to such individuals.   If Atherton's argument was accepted by the Court, the term "any person appointed by the mayor" in Section 3-3 of the Charter would have no practical effect.   In such cases, the application of *ejusdem generis* is not warranted or appropriate.  Id.

In construing the Charter in a manner consistent with the Ordinance language and legislative intent of the City, it is clear that Sections 3-3 and 3-4 of the Charter, in conjunction with Sections 2-405, 2-406 and 3-313 of the City's Revised Ordinances govern employment in the position of Confidential Secretary to the Mayor.   As such, Atherton cannot be found to have any property interest in such employment, nor any due process interest prior to termination of her employment.

2.   Atherton is Unable to Demonstrate Any Damages Resulting from an Alleged Due Process Violation.

Even assuming that Atherton is able to establish that Section 8-15 of the Charter applies to her employment and that she was entitled to a "public hearing" prior to discharge, Atherton is not able to establish that she suffered any compensable damages as the result of not being provided with a hearing.  Under Section 8-15, after a public hearing is held the appointing authority may choose to rescind the removal notice, proceed with removal or take no action, which results in reinstatement of the employee.   While Atherton attempts to assert that the failure to hold a hearing is akin to taking no action after a hearing is held, there is no basis in law or fact to support such an assertion.  Rather, the Mayor did take action in response to Atherton's

8

request for a hearing – he did not rescind the notice and chose to appoint Linda Giallongo to the position of Confidential Secretary.   Thus, even assuming that Atherton was entitled to a hearing, the Mayor determined not to rescind her notice and appointed another person to the position. There is no reason or basis to conclude that had a hearing been held, Atherton would have remained in the position of Confidential Secretary.   All of the evidence, including the Mayor's appointment of Ms. Giallongo and his deposition testimony clearly establish that Atherton, under no circumstances, would have remained as the Mayor's Confidential Secretary.   Without some persuasive showing that receiving a hearing would have entitled her to retain her position, Atherton cannot establish that she was damaged by her failure to receive a hearing.  At most, Atherton would be entitled to a public hearing if the Court determined that one was required by the Charter.   Any award of lost wages or any finding of a right to continued employment would be highly speculative.

C.    <u>No Facts Exist To Support a Violation of Atherton's First Amendment Rights.</u>

In her Third, Fourth, and Sixth Counts, Atherton alleges the Defendants terminated her employment in violation of the First Amendment to the United States Constitution, 42 USCA § 1983, and Article 16 of the Massachusetts Declaration of Rights, and that they retaliated against her by terminating her without a hearing for exercising her constitutional rights. Atherton's Motion for Summary Judgment asserts that she is entitled to judgment because the position of "Confidential Secretary to the Mayor" is not a "policymaking" position and, as such, she could not be terminated for her political affiliation with the prior administration.  As demonstrated below, there is no requirement that the position of Confidential Secretary be a "policymaking" position in order to establish that political affiliation is an appropriate requirement for the position.

9

1.    <u>Legal Standard for Establishing Political Termination in Violation of the First Amendment.</u>

In political discrimination cases, the plaintiff must first show party affiliation was a substantial or motivating factor for the contested action.  <u>See</u> <u>Ortiz-Piñero</u> v. <u>Rivera-Arroyo</u>, 84 F.3d 7, 11-12 (1st Cir. 1996) (internal citations omitted).  "The burden then shifts to defendants to establish *either* a nondiscriminatory reason for the dismissal, <u>see</u> <u>Ferrer</u> v. <u>Zayas</u>, 914 F.2d 309, 311 (1st Cir. 1990), *or* that plaintiff held a "political" position for which party affiliation constituted an appropriate qualification for continued employment, <u>see</u> <u>Branti</u> v. <u>Finkel</u>, 445 U.S. 507, 518 (1980)."  <u>Ortiz-Piñero</u>, 84 F.3d at 12 (emphasis in original).

A two-part test is used by the courts to identify "political" positions.  <u>See</u> <u>Cordero</u> v. <u>DeJesus-Mendez</u>, 867 F.2d 1, 9 (1st Cir. 1989).  Step one is to decide whether the position at issue relates to partisan political interests or concerns.  <u>See</u> <u>Cordero</u>, 867 F.2d at 9.  "The second step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, privy to confidential information, a communicator, or some office holder whose function is such that party affiliation is an equally appropriate requirement."  <u>Id.</u> (internal citations omitted).  In the second inquiry, the focus should be on "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office."  <u>Id.</u>  An employee is not immune from a political termination "merely because the employee 'stands apart from partisan politics,' is not the ultimate decisionmaker in the agency or is guided in some responsibilities by technical or professional standards."  <u>Hadfield</u> v. <u>McDonough</u>, 407 F.3d 11, 16 (2005) *citing* <u>Flynn</u> v. <u>City of Boston</u>, 140 F.3d 42, 46 (1st Cir. 1998).  In <u>Hadfield</u>, the Court went on to state that "[t]hese principles have led to rulings dismissing political discharge cases when brought by…<u>the municipal secretary in a mayor's office</u>." [Emphasis added] <u>Hadfield</u>, 407 F.3d at 16 n.2.

10

2.    <u>Application of Legal Standard to Position of Confidential Secretary to the Mayor.</u>

It is significant to note that the Plaintiff fails to offer any evidence that her political affiliation was the "motivating" factor in her removal.  As established by the record, Mayor Scanlon testified that there were several other reasons for Atherton's removal including his desire to appoint Linda Giallongo, who had held the position for approximately 20 years, including during Mayor Scanlon's prior term, and Mayor Scanlon's own observations of Atherton's work ethic.   DSOF, ¶¶29, 33.  Because Atherton has not established that Atherton's political affiliation was a motivating factor in her removal, her motion for summary judgment must be denied as to Count II.

Assuming *arguendo* for the purposes of summary judgment, that Atherton can establish that political affiliation was a motivating factor in her discharge, which the Defendants dispute, the evidence establishes that political affiliation is an appropriate requirement for the position of Confidential Secretary to the Mayor.   While Atherton attempts to argue that the position of Confidential Secretary to the Mayor is not a position policymaking position and as such is not exempted from the prohibition against political terminations, the case law clearly establishes that the position is not required to be one of policymaking for the exemption to apply.  <u>See</u> <u>Hadfield</u>, 407 F.3d at 16; <u>Flynn</u>, 140 F.3d at 46.  Moreover, Atherton's argument is further undermined by her reliance on job duties performed by herself and Giallongo, rather than the actual job description for the position.   It is clearly established that the job description, not the actual duties performed by a person holding the position at any given time, "is the best objective evidence of the powers inherent in a given office."  <u>See</u> <u>Galloza</u> v. <u>Foy</u>, 389 F.3d 26, 31 (1st Cir. 2004); <u>Mendez-Palou</u> v. <u>Rohena-Betancourt</u>, 813 F.2d 1255, 1260 (1st Cir. 1987).   It should be noted, however, that some deference is also given to municipal ordinances that designate positions as

"confidential," "especially where other evidence clearly points in the same direction," Ortiz-Piñero, 84 F.3d at 16.

The job description for the position of Confidential Secretary to the Mayor includes several duties that warrant a finding that political affiliation is a permissible requirement for the position. Such job duties include, but are not limited to, the following:

- Organize and summarize information and prepare it for the Mayor's review and action;

- Meet with department heads regarding day to day business, expediting administrative interaction between the Mayor's office and City departments;

- Serve as a liaison officer between the Mayor, the media, public interest groups, businesses and residents;

- Be familiar with all aspects of the City government and with the functions and activities of the various offices and employees of the City;

- Answer all telephone calls placed to the office, respond in an appropriate fashion and direct as appropriate;

DSOF, ¶¶20-21. Additionally, Giallongo testified that she reviews the Mayor's e-mail correspondence, communicates messages between the Mayor and Department Heads, is privy to confidential documents and matters, attends confidential meetings and hearings and handles constituent services for the Mayor, which includes addressing citizen complaints and communicating the Mayor's response to the citizens. DSOF, ¶¶77-78. Mayor Scanlon also testified that Giallongo communicates to the public on his behalf, serves as his liaison with Department Heads and is the gateway to the Mayor. Id. Mayor Scanlon further testified that he

discusses City issues with Giallongo and listens to her opinion and counsel.  (DSOF Exhibit 4, ¶8).

It is clear from the above that political affiliation is "an appropriate criterion for holding the post" of Confidential Secretary to the Mayor.  See Hatfield, 407 F.3d at 16-17.    Indeed, without being assured that the position is filled with an individual loyal to the Mayor, the Mayor could never trust that the person filling the position would carry out his goals and objectives in communicating his messages to Department Heads and the citizens.   See Hatfield, 407 F.3d at 16-17.   Furthermore, the Mayor could never be sure that the confidential information, including documents, e-mails and other correspondence received by or authored by the Mayor would not be collected and provided to his political rivals.

Moreover, even if a plaintiff successfully introduces evidence to purportedly show that he had not personally wielded many of the policy-making powers listed in a particular job description, and the court considers such evidence, summary judgment will still be granted to the defendant where the court determines that political affiliation is a permissible requirement for the contested position.  See, e.g., Otero-Varcalcel v. Cantero-Frau, 124 Fed.Appx. 662 (2005). Whether a government position is "political" is a question of law for the court and "requires a court to look closely at the position to identify its inherent duties and then to make a judgment about whether the position is one for which political affiliation is appropriate."  Hadfield v. McDonough, 407 F.3d 11, 16 (2005); see also Ortiz-Piñero, 84 F.3d 12.

In this case, the Mayor's Office is charged with the executive and administrative powers of the City, including the general supervision and direction over all City agencies, activities and functions placed under its control by law.  DSOF, ¶¶5-7.  See Cordero, 867 F.2d  at 11 (recognizing "inherent political nature" of mayor's office); see also Faughender v. City of North

13

Olmsted, Ohio, 927 F.2d 909, 913 (6th Cir. 1991) ("The mayor of a city is the supreme administrative agent of the government, clearly a policymaker of the highest order"). Thus, the Mayor's Office is unmistakably a municipal department whose functions involve "decision making on issues where there is room for political disagreement on goals or their implementation," and the Office's "inherent responsibilities inevitably entail the kinds of discretionary decisions traditionally associated with municipal politics." Ortiz-Piñero, 84 F.3d at 12-13. As such, the first prong of the two-part test is met.

Turning to the second prong, the evidence reveals that the job duties for Confidential Secretary to the Mayor are set forth in the Ordinances, as well as in a formal job description. DSOF, ¶¶20-21, 28. The position includes seven essential duties and responsibilities. DSOF, ¶¶20-21. The job description notes that "other duties may be assigned," and Giallongo performs many duties that are not outlined in the Ordinances or the job description, such as: attending confidential meetings and hearings; keeping the Mayor's calendar, scheduling his appointments and making sure he gets to where he needs to be when he needs to be; typing all speeches, press releases, and correspondence; communicating the Mayor's position on issues to Department Heads; receiving and responding to the Mayor's email; advising on City issues; processing payroll; handling accounts receivable and payable; signing documents on behalf of the Mayor; DSOF, ¶¶21, 77-78. Other than the Mayor, Giallongo is the only other person in the Mayor's Office. DSOF, ¶¶43, 78. As such, Giallongo serves as the gateway to the Mayor's Office and greets all visitors. DSOF, ¶78. Giallongo and Scanlon have a confidential relationship, and she is exposed to confidential correspondence and materials on a daily basis. DSOF, ¶¶77-78. As such, the duties of the Confidential Secretary listed in the Ordinance and job description, "together with the inherent political nature" of the Mayor's Office and Giallongo's many other

14

duties, reveal that political affiliation is "a dynamic and essential requirement" for the discharge of the Mayor's Office. Cordero, 867 F.2d at 11. Accordingly, because Atherton held a "political" position for which party affiliation constituted an appropriate qualification for continued employment, the Defendants are entitled to judgment as a matter of law on Atherton's political discrimination claims. See Branti, 445 U.S. at 518.

Additionally, with regards to Atherton's contentions that her discharge was based on her political beliefs and/or speech in support of Crean, if the Defendants can demonstrate "an overriding interest of vital importance," requiring that Atherton's private beliefs conform to those of Mayor Scanlon, Atherton's beliefs can be the sole basis for depriving her of continued public employment. Branti, 445 U.S. at 515-516. Additionally, "if an employee's private political beliefs would interfere with the discharge of [her] public duties, [her] First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." Id. at 517. The Court further noted that it is "clear that party affiliation is not necessarily relevant to every policymaking or confidential position," and that "it is equally clear that the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." Id. at 518. Here, the evidence demonstrates that for two years, from 2001 through 2003, Atherton complained to members of the City Council, the Ordinance Review Committee, the League of Women Voters, the City Solicitor, and others that it was her opinion that Scanlon was an obstacle to implementing the Charter provisions. DSOF, ¶30. Atherton also claimed Scanlon failed to uphold his oath of office by failing to uphold the Charter, the Ordinances and the law of the Commonwealth. DSOF, ¶30. Additionally, Atherton

15

actively campaigned for Crean and contributed to his re-election campaign against Scanlon. DSOF, ¶¶24, 69. Furthermore, based on Scanlon's prior observations of Atherton's work habits, performance, and demeanor, he had concerns about her ability to handle the job. DSOF, ¶¶29, 36, 41. Scanlon also did not have trust or confidence in Atherton. DSOF, ¶¶29, 36, 41. As such, based on Atherton's political beliefs and her feelings towards Scanlon, Scanlon was warranted in believing that Atherton's political beliefs would have interfered in the discharge of her public duties, and his act of terminating her was necessary to maintain the "governmental effectiveness and efficiency" of the Mayor's Office. Branti, 445 U.S. at 517.

IV.   CONCLUSION

WHEREFORE, based on any or all of the foregoing reasons, the Defendants respectfully request that all Counts in this case be dismissed against the Defendants.

DEFENDANTS,

CITY OF BEVERLY,
WILLIAM F. SCANLON, JR., and
JOHN DUNN,
By their attorneys,


_/s/ _ Elizabeth R. Corbo_____
David C. Jenkins (BBO# 251000)
Elizabeth R. Corbo (BBO# 640131)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007

Dated:  April 18, 2008

<u>CERTIFICATE OF SERVICE</u>

I, Elizabeth R. Corbo, certify that the above document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of those individuals who will not be served electronically.

/s/ *Elizabeth R. Corbo*

343850/60700/0580

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05CV11323-MLW

CRYSTAL A. ATHERTON, and
ROBERT W. ATHERTON,

      Plaintiff,

v.

CITY OF BEVERLY, WILLIAM F.
SCANLON JR., in his official and
individual capacity, and JOHN DUNN, in
his official and individual capacity,

      Defendants

DEFENDANTS' REPLY TO
PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT</u>

I.    <u>INTRODUCTION</u>

      Plaintiff, Crystal A. Atherton ("Atherton"), filed a thirteen-count complaint against

defendants, City of Beverly ("City"), William F. Scanlon, Jr. ("Scanlon"), and John Dunn

("Dunn") (collectively "the Defendants"), stemming from the termination of Atherton's at-will

employment as the Confidential Secretary to the former Mayor.  Of the original thirteen counts,

the remaining claims include:  a procedural due process violation (Count I); violations of

Atherton's First Amendment and state free speech rights (Counts III, IV and VI); violations of

Atherton's federal and state civil rights (Count V); a violation of the Wage Act (Count X); and a

claim for intentional infliction of emotional distress (Count XII).  The Defendants argue that, on

the record, no genuine issue of material fact exists to support these claims, and the Defendants

are entitled to judgment as a matter of law.  The Defendants filed a Motion for Summary

Judgment on all Counts.  Plaintiff filed a Motion for Summary Judgment limited to Counts I and

II of the Complaint.   The Defendants submit this Memorandum of Law in Opposition of the Plaintiff's Motion for Summary Judgment.

II.    FACTS & PROCEDURAL HISTORY

The Defendants rely upon and incorporate herein the Defendants' Local Rule 56.1 Statement of Facts, filed with Defendants' Motion for Summary Judgment, which will be referred to below as "DSOF, ¶___."

III.    ARGUMENT

A.    Atherton is Not Entitled to Summary Judgment as to Count I and Judgment Must Enter in Favor of the Defendants.

In Count I, Atherton asserts a constitutional due process claim against the City and Scanlon, averring she had a property interest in continued employment as Confidential Secretary that entitled her to a pre-termination hearing based upon "good cause" language in Section 8-15 in the City's Home Rule Charter ("Charter").

"In a due process claim stemming from the termination of employment, a public employee must first demonstrate that [she] has a reasonable expectation, arising out of a statute, policy, rule, or contract, that [she] will continue to be employed."  Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st Cir. 2006) (internal citation omitted).  When no "independent source" exists, the federal constitution offers no procedural protections.  Kelley v. Action for Boston Community Development, Inc., 419 F. Supp. 511, 518 (D. Mass. 1976).  State law is used to determine whether such a property interest exists.  Acevedo-Feliciano, 447 F.3d at 121.

1.    Atherton cannot establish a "Reasonable Expectation" of Continued Employment and thus, cannot establish a Due Process Interest in her Employment.

Section 3-313 of the City's Ordinances details the terms of employment for the Confidential Secretary to the Mayor and expressly provides that "[t]here shall be a Confidential

2

Secretary/Administrative Assistant to the Mayor," who "<u>shall be appointed by and responsible</u>

<u>only to the Mayor</u>" and who "<u>shall serve at the pleasure of the Mayor</u>."  DSOF, ¶20. (emphasis

added).  Atherton, herself, admitted that she was responsible for drafting such language.

(DSOF, ¶¶25-26).   As such, Atherton is not able to establish that she had any reasonable

expectation of continued employment when she memorialized in writing that the position serves

"at the pleasure of the Mayor."  DSOF, ¶20. (emphasis added).

> 2.    <u>Neither Section 5-3 nor Section 9-4 of the Charter provide Atherton with a</u>
> <u>Property Interest in Her Employment.</u>

Atherton attempts to argue that Sections 5-3 and 9-4 of the Charter support her position

that she could not be terminated except for "cause" under Section 8-15 of the Charter.

> a.    <u>Section 5-3 "Merit Principle"</u>

This section, by its specific terms, applies solely to "appointments and promotions" of

city officers and employees.   This section does not address terminations of employment or

continued employment with the City.   (DSOF, Exhibit 7)

> b.    <u>Section 9-4 "Continuation of Personnel"</u>

This section of the Charter, which falls under Article 9, specifically entitled "Transitional

Provisions, deals solely with transitioning the City to the new Charter provisions.   There is

nothing in the Charter to suggest that such provision applies to general employment beyond the

period of transitioning to the new Charter.  Indeed, all of Section 9 specifically addresses the

timeframe for the City to transition in the new Charter provisions.  (DSOF, Exhibit 7)

Finally, to the extent that Atherton argues that Article 9 entitles her to continuation in her

position of Confidential Secretary, at the time the Charter was adopted Atherton was not

employed in such position.   As such, the provision cited with emphasis by the Plaintiff, Section

9-4, which states "All such persons shall be retained in a capacity as similar to the capacity in which they were serving at the time this charter is adopted as is practicable" would not be at all relevant to Atherton's employment as Confidential Secretary to the Mayor.

      3.    <u>Atherton Offers No Evidence Regarding the Historical Intent of the Charter.</u>

Atherton asserts without any evidentiary support that at the time the Charter was adopted, the only persons in the City who were not entitled to a hearing prior to their termination were city officers, department heads and the members of multiple-member bodies. Atherton offers no evidentiary support for this assertion. Rather, as provided by Section 3-3 of the Charter, persons appointed by the Mayor could be removed by the Mayor pursuant to the procedures outlined in Section 3-4 of the Charter. The record is devoid of any evidence establishing that a person appointed by the Mayor has ever received a hearing pursuant to Section 8-15 of the Charter prior to termination.

Atherton's assertions of the intent of the voters are wholly unsupported. There is no documentary evidence to establish that the voters intended anything other than the specific language of the Charter, namely that employees appointed by the Mayor can be removed by the Mayor pursuant to the provisions of Section 3-4 of the Charter. (DSOF, ¶¶7, 8, 20)

      4.    <u>There is no Conflict between the Charter and Section 3-313 of the Ordinances Drafted by the Plaintiff and Adopted by the City.</u>

Atherton asserts that the City Ordinances, which she drafted while in the position of Confidential Secretary, are not applicable as they conflict with the City Charter and the Charter language trumps any conflicting language in an Ordinance. <u>See</u> <u>Chief of Police of Chelsea</u> v. <u>Mayor of Chelsea</u>, 21 Mass. App. Ct. 530 (1986). While the general principle of law is correct, the Charter only trumps over <u>conflicting</u> language in an ordinance. Where there is no conflict

between the Charter language and the language of the Ordinance, both must be read together to "constitute a harmonious whole consistent with the purpose of their enactment." Id. at 532. In this instance, there is no conflict between the Charter language and that of the Ordinance which would require the Court to negate the City's duly enacted ordinances.

Section 8-15 contains general language that does not specifically identify the position of Confidential Secretary, while Section 3-313 of the City's Ordinances specifically relate to the position of Confidential Secretary. As a general cannon of statutory construction, general language "must yield to that which is more specific." TBI, Inc. v. Bd. of Health of North Andover, 431 Mass. 9, 18 (2000) (internal citation omitted). In this instance, the very specific language of the Ordinances can be read consistently with the broad and general language of Section 8-15 of the Charter. There is no basis to assert that a conflict between the two provisions exists.

Indeed, Massachusetts case law mandates that Courts must construe a city's "charter and ordinances together so that they constitute a harmonious whole consistent with the purpose of their enactment," and "a literal construction will not be adopted 'when that construction would be inconsistent with other material provisions of the statute and would defeat the aim and object of the legislation.'" Mayor of Chelsea, 21 Mass. App. Ct. at 532, quoting Lexington v. Bedford, 378 Mass. 562, 570 (1979). If Atherton's argument is accepted by the Court, such would completely eviscerate Section 3-313 of the City's Ordinances. Defendants assert that such a drastic result is not required as both Sections 3-3 and 3-4 of the City's Charter, which specifically relate to Mayoral appointments, are wholly consistent with Section 3-313 of the City Ordinances.

5

B.    No Facts Exist To Support a Violation of Atherton's First Amendment Rights.

      1.    The job duties in Section 3-313 of the Ordinances Govern the Position of Confidential Secretary to the Mayor.

In an attempt to avoid the clear language of the law stating that in determining whether the job at issue is one where political affiliation is an appropriate requirement, deference is given to the job description duties, Atherton attempts to argue that the Confidential Secretary/Administrative Assistant to the Mayor as detailed in Ordinance Section 3-313 is actually two separate positions. Atherton asserts that such description also encompasses the job duties of Chief of Staff to the Mayor. Such argument is without merit. The position for Chief of Staff to the Mayor is a separate position specifically delineated on the City's Organizational Chart. See DSOF, Exhibit 12. Moreover, the Ordinances specifically address the job duties of the Mayor's Chief of Staff. See Defendants' Exhibit 37, Ordinance Section 3-308. The two positions are clearly separate and there is no support for the argument that the Confidential Secretary/Administrative Assistant position in Section 3-313 of the Ordinances actually consists of two separate positions and that the job duties as stated in Section 3-313 do not apply to the position.

Finally, to the extent that Atherton was not assigned all of the job duties in the job description, assuming such to be true, it is of no consequence to the outcome of this matter. It is clearly established that the job description, not the actual duties performed by a person holding the position at any given time, "is the best objective evidence of the powers inherent in a given office." See Galloza v. Foy, 389 F.3d 26, 31 (1st Cir. 2004); Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1260 (1st Cir. 1987). It should be noted, however, that some deference is also given to municipal ordinances that designate positions as "confidential,"

"especially where other evidence clearly points in the same direction," <u>Ortiz-Piñero</u>, 84 F.3d at

16.

IV.    <u>CONCLUSION</u>

WHEREFORE, based on any or all of the foregoing reasons, the Defendants respectfully

request that all Counts in this case be dismissed against the Defendants.

DEFENDANTS,

CITY OF BEVERLY,
WILLIAM F. SCANLON, JR., and
JOHN DUNN,
By their attorneys,


_/s/_  Elizabeth R. Corbo_____
David C. Jenkins (BBO# 251000)
Elizabeth R. Corbo (BBO# 640131)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007

Dated:  April 30, 2008

7

<u>CERTIFICATE OF SERVICE</u>

     I, Elizabeth R. Corbo, certify that the above document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of those individuals who will not be served electronically.

                                                     /s/ *Elizabeth R. Corbo*

344951/60700/0580

8