UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.: 05-11323 MLW

|  |  |
|---|---|
| **CRYSTAL A. ATHERTON** and **ROBERT W. ATHERTON**    Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| **CITY OF BEVERLY, WILLIAM F. SCANLON, JR.**, in his official and individual capacity    Defendants. | ) ) ) ) ) ) |

**REPLY OF PLAINTIFF, CRYSTAL A. ATHERTON, TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

I.   INTRODUCTION

The Plaintiff, Crystal A. Atherton (hereinafter "Atherton"), now files this Reply to Defendants' Opposition to Plaintiff's Partial Summary Judgment as to Liability (hereinafter "Opposition"). In their Opposition, Defendants City of Beverly (hereinafter "City") and William F. Scanlon (hereinafter "Scanlon") maintain that the Plaintiff was properly terminated as secretary to the Mayor in accordance with the applicable Charter and ordinances of the City. Atherton now files the within Response to the Defendants' Opposition and requests that her Motion for Summary Judgment as to Liability be allowed.

II.   FACTS & PROCEDURAL HISTORY

Atherton relies upon and incorporates by reference herein her Local Rule 56.1 Statement of Facts in Support of Plaintiff's Motion for Summary Judgment as well as her Local Rule 56.1 Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, which are both referenced herein as SoF ¶_____. In addition to her previously filed Local Rule 56.1 Statements of Facts, and in order to avoid unnecessary repetition, Atherton also relies upon her

1

Memorandum in Support of Summary Judgment (hereinafter "Memorandum in Support") as well as her Memorandum in Opposition to Defendants Motion for Summary Judgment (hereinafter "Memoranum in Opposition") which are also incorporated by reference herein.

III. ARGUMENT

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. See id. "If, after canvassing the material presented, the district court finds some genuine factual issue remains in the case, whose resolution one way or the other could affect its outcome, the court must deny the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). The Court is free, however, to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.' " *Suárez v. Pueblo Int'l Inc.*, 229 F.3d 49, 53 (1st Cir.2000) (*citing Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

The summary judgment standard under Rule 56 is not altered by cross-motions for summary judgment. Cross-motions for summary judgment require the court to determine if either of the parties deserves judgment as a matter of law on facts that are not disputed. *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001); *see also Wiley v. American Greetings Corp.*, 762 F.2d 139, 141 (1st Cir.1985). Cross-motions for summary judgment are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the

other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment. *See Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *see also Redman v. Warrener*, 516 F.2d 766, 768 & n. 2 (1st Cir.1975); 6 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 56.13 (2d ed. 1981) ("The well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.") (footnotes omitted). Finally, a party's response to the other party's statement of material facts in support of a motion for partial summary judgment is sufficient to also serve as statement of material facts in support of its cross-motion for summary judgment. *O'Shea v. Childtime Childcare, Inc.*, 2002 WL 31738936 (N.D.N.Y.2002).

    A.    ATHERTON IS ENTITLED TO SUMMARY JUDGMENT AS THE DEFENDANTS FAILED TO COMPLY WITH THE CITY'S CHARTER

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." Amdt. 14, § 1. In 42 U.S.C. § 1983, Congress created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." A public employer cannot deprive its employee of a constitutionally recognized liberty interest, or of a substantial property interest in public employment, without affording the employee due process. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (holding that a public employee classified as a "civil servant" under Ohio law has a property interest in continued employment, of which the State cannot deprive him without due process). However, the Constitution does not create property interests; instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577 (1972); *see also Metivier v. Connor*, 283 F.3d 391 (1st Cir. 2002) (town accountant had no property interest in her job under

town charter or Massachusetts law, for town's failure to reappoint her); *Joslyn v. Kinch*, 613 F.Supp. 1168 ( R.I. 1985) (where city charter provided that dismissal of an employee who had completed his probationary period of service had to be for cause, city employee had "property interest" in his job).

In the present case, Defendants maintain that Atherton's employment is governed by Sections 3-3 and 3-4 of the City Charter. However, the express language of Sections 3-3 and 3-4 only applies to members of multiple member bodies, department heads and city officers. In order to argue that Sections 3-3 and 3-4 of the City Charter apply to the position of secretary to the mayor, Defendants continue to assert that Sections 2-405, 2-406 and 3-313 of the City's Revised Ordinances (hereinafter collectively "Ordinances") expressly allows the mayor to appoint and therefore remove the secretary. Defendants disregard that the enactment of Ordinance Section 3-313 took place many years after the adoption of the Charter. SoF ¶¶ 41 & 42. Accordingly, when the Charter was adopted there was no express authority permitting the Mayor to remove the secretary and voters who adopted the Charter could not have intended that the Mayor receive the power to remove the secretary under Sections 3-3 and 3-4 of the City Charter. See also Memorandum in Opposition, pp. 5-13. The Defendants reliance upon the Ordinances as authority to terminate Atherton remains misplaced as the Charter did not grant the City Council with the delegation authority to terminate any person other than members of multiple member bodies, city officers and department heads.

Defendants claim that the authority to appoint and remove are inherently executive. However, the express language of Charter Section 8-15, which sets forth the powers of the mayor, specifically limits the authority of the Defendants to terminate or suspend city employees for "good cause." The adoption of the Ordinances do not and may not alter the right of an employee to receive a hearing under Section 8-15 of the Charter without specific language in the Charter exempting the employee from the "good cause" requirement. As set forth in Town Council of Agawam v. Town Manager of Agawam, 20 Mass.App.Ct. 100 (1985) and further

4

discussed in Plaintiff's Opposition, a town council's attempt to vote to itself the right to confirm certain appointments made by the town manager violated the right of home rule when the Charter specifically vested the right to appointment in the town manager. Likewise, in the present matter, an ordinance adopted by the City Council cannot be allowed to alter the preexisting right under the Charter to receive a hearing prior to termination.

> B.   BASED UPON PRINCIPLES OF STATUTORY CONSTRUCTION, ATHERTON WAS ENTITLED TO A "GOOD CAUSE" HEARING

Defendants argue that the principle of statutory construction referred to as "*ejusdem generis*" is not applicable in the instant matter to interpret Section 3-3 of the Charter. "The doctrine of ejusdem generis is applicable: 'Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.' 2A Sands, Sutherland Statutory Construction § 47:17 (4th ed. 1973)." Dickson v. Riverside Iron Works, Inc., 6 Mass.App.Ct. 53, 55-56 (1978) (using doctrine to construe contract). *See Santos v. Bettencourt*, 40 Mass.App.Ct. 90, 92 (1996) (in statute describing "a place of assembly, theater, special hall, public hall, factory, workshop, manufacturing establishment or building," the word building does not include a house). *See also USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass.App.Ct. 108, 116 (1989) (interpretation of contract is question of law for court, whose objective is to "construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose"). Specifically, the Defendants maintain that the principle of "*ejusdem generis*" should not be applied because the legislative purpose will be defeated by its application to the Charter even though it would limit Section 3-3 to members of multiple-member bodies, department heads and city officials. However, the Ordinances in question were not in place at the time that the Charter was adopted so it was clearly the intent of the voters to limit the Mayor's ability to remove the listed classes of employees only.

Furthermore, the maxim of "*expressio unius est exclusio alterius*" instructs that, "when

parties list specific items in a document, any item not so listed is typically thought to be excluded." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995); *see also Collatos v. Boston Retirement Board*, 396 Mass. 684, 687 (1986) ("The statutory expression of one thing is an implied exclusion of other things omitted from the statute"); *Ianella v. Fire Commissioner of Boston,* 331 Mass. 250, 252 (1954). Accordingly, this well recognized canon of statutory construction supports the conclusion that there was no intention of the voters to include the executive secretary as an individual who could be removed without "good cause" under the Charter, even if the ordinances had been in effect at the time the Charter was adopted.

      C.      HARMONIOUS CONSTRUCTION OF THE ORDINANCES WOULD HAVE PERMITTED ATHERTON TO RETAIN HER EMPLOYMENT

Alternatively, even assuming that Atherton could be removed from her position as Executive Secretary to the Mayor, a harmonious construction of the applicable Charter provisions with the Ordinances would have permitted her to continue employment with the City. In this manner, Mayor Scanlon could have retained an Executive Secretary of his choosing while allowing Atherton an opportunity to work for a different department with the City of Beverly. Instead, the Defendants have erroneously maintained that the termination of Atherton without a hearing was a lawful exercise under the Charter and applicable Ordinances.

      D.      ATHERTON ONLY SEEKS SUMMARY JUDGMENT AS TO LIABILITY AND UNDER SECTION 8-15 OF THE CHARTER HER TERMINATION FROM EMPLOYMENT COULD ONLY TAKE PLACE FOR GOOD CAUSE

Defendants argue in their Opposition that Atherton is not able to establish that she suffered any compensable damages as the result of not being provided with a hearing. However, the Defendants fail to appreciate that Atherton has only sought Summary Judgment as to Liability. Moreover, the Defendants' argument also fails to realize that Section 8-15 of the Charter requires the City to articulate a 'good cause' to justify Atherton's termination. Neither Scanlon nor the City of Beverly have set forth a legitimate "good cause" for Atherton's

termination even if the appointing authority were completely bias. Finally, notwithstanding the absence of "good cause" or a determination of the amount of damages at this time, the trier of fact would typically award nominal damages in the absence of compensatory damages. *See, e.g., Anderson v. City of Boston,* 375 F.3d 71 (2005); *Campos-Orrego v. Rivera*, 175 F.3d 89 (1999).

      E.      THERE ARE SUFFICIENT FACTS TO SUPPORT ATHERTON'S CONTENTION THAT THE DEFENDANTS VIOLATED HER FIRST AMENDMENT RIGHTS BY HER TERMINATION FROM THE CITY

Ever since the Supreme Court's decision in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673 (1976), public employee's who allege that they were discharged due to their political affiliation state a claim for violation of their first and fourteenth amendments rights. 427 U.S. at 373, 96 S. Ct. at 2689. Only "policymaking" or "confidential" positions were exempted by the Elrod court, so as to preserve the vital interest of representative government. *See Elrod*, 427 U.S. at 367, 96 S,Ct. at 2687; id, at 375, 96 S. Ct. at 2690 (Stewart, J. concurring). Four years later, in *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287 (1980), the Supreme Court revisited the Elrod decision, and after concluding that the "policymaking" and "confidential" labels employed in Elrod were both over inclusive and under inclusive, opted instead for a totality of the circumstances test. Although consistent with Elrod, the Branti court held that " the ultimate inquiry...is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, ante, at 1295. In *Jimenez Fuentes v. Torres Gaztambide*, 803 F.2d 1 (1st Cir. 1986), the First Circuit developed a two-pronged test to attempt to demarcate the boundary of first amendment protection from politically motivated discharge. First, as a threshold issue, it must be decided " 'whether the position, no matter how policy-influencing or confidential it may be, relates to political interests... [or] concerns.' " Id, at 6 (*quoting Branti*, 445 U.S. at 519, 100 S. Ct. at 1295). To make this determination, it is helpful to consider whether the agency employing the plaintiff handled matters potentially subject to partisans political differences and to focus upon how the plaintiff's position influenced the

7

resolution of such matters. This step is designed to cut off from further consideration those positions involving matters devoid of partisans concerns, such as the "proper paper flow in an agency." *Mendez- Palou v. Rohena Betancourt*, 813 F. 2d 1255 (1st Cir. 1987), *citing De Choudens v. Government Development Bank of Puerto Rico*, 801 F. 2d 5, 10 (1st Cir. 1986).

In a political discrimination case, Atherton must first show that party affiliation was a substantial or motivating factor for the dismissal. *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Ortiz-Pinero v. Rivera-Arroyo*, 84 F.3d 7, 11-12 (1st Cir. 1996); Jirau-Brernal v. Agrait, 37 F.3d 1, 3 (1st Cir. 1994). Based upon the uncontroverted evidence presented by Atherton, it is clear that a motivating factor in Atherton's dismissal was her affiliation with Scanlon's predecessor, Thomas Crean. (Defendants' Statement of Facts ¶ 74 and Plaintiff's Response thereto).

The First Circuit has established a two-part test to aid the court in determining whether political affiliation is an appropriate requirement for the effective performance of the public office involved. *Jimenez Fuentes*, 807 F.2d at 241. For a position to fit the Elrod-Branti exception, both steps of the Jimenez Fuentes test must be satisfied. The first step is to ask whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests. *Id*. The position need only involve decision making on issues where there is no room for political disagreement on goals or their implementation. *Mendez-Palau v. Rohena-Betancourt*, 813 F.2d 1255, 1258 (1st Cir.1987).

The second step requires the court to determine whether the particular job resembles that of a "policymaker, a communicator, or a privy to confidential information." *Jimenez Fuentes*, 807 F.2d at 242. This step involves a further inquiry into the inherent powers and privileges of the position and not to the duties actually carried out by a particular employee. Id. at 242. The First Circuit has stated that a job description is considered the best source for determining whether a particular position falls within the Elrod-Branti exception. *Ortiz-Pinero v. Rivera-Arroyo*, 84 F.3d 7, 13 (1st Cir.1996). In reviewing the job description, the First Circuit

has looked to whether the duties assigned are broad or open ended or whether they convey power or discretion to take action. However, the purported job description contained within Section 3-313 of the Ordinances contains a job description for both the secretary position as well as the Administrative Assistant, so the description cannot be given much weight in ascertaining whether the job duties involve policymaking. SoF ¶ 37. Accordingly, in this matter, the official description of job functions is not a presumptively reliable basis for determining those functions. *Cf. Duriex-Gauthier v. Lopez-Nieves*, 274 F.3d 4, 8 (1st Cir.2001).

As noted in Plaintiff's Memorandum for Summary Judgment, there is ample evidence that Atherton: had no significant supervision or control over other city employees; had no authority to speak in the name of the Mayor; had no significant influence on programs or policy initiatives within the city; and simply served in a clerical position who could not influence matters subject to partisan differences. *See Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 325-26 (1st Cir.1987); *Galloza v. Foy*, 389 F.3d 26, 29 (1st Cir. 2004). In fact, according to the deposition of Linda Giallongo, Atherton's successor as secretary, Giallongo:

- takes notes at meetings, but the secretary has never otherwise attended meetingson behalf of the mayor; (SoF ¶ 18)
- has never represented the Mayor outside of City Hall; (SoF ¶ 18)
- does not advise the Mayor as to policy (except as to licensing board in which secretary serves as the role of clerk); (SoF ¶ 18)
- has never been asked to influence other officials; (SoF ¶ 18)
- completes payroll paperwork; (SoF ¶ 18)
- answers constituent phone calls; (SoF ¶ 18)
- pays bills; (SoF ¶ 18)
- fills out forms when money is taken in for yard sale permits; (SoF ¶ 18)
- provides copies of licenses to those making requests; (SoF ¶ 18)
- sends out form letters regarding appointments/re-appointments from a template or

9

       as otherwise directed by Mayor; (SoF ¶ 18)

- conveys messages to and from Mayor and department heads; (SoF ¶ 18)
- does not typically sign documents as Mayor signs or she is authorized to sign his name and her initials; (SoF ¶ 18)
- organizes and summarizes information for the Mayor's review; (SoF ¶ 18)
- does not serve as a liason between the mayor, media, public interest groups, business and residents although listed in § 3-313. The latter was a function of the administrative assistant and Mayor Scanlon now takes care of those functions; (SoF ¶ 19)
- does not speak on behalf of the Mayor or otherwise explain the Mayor's policies with the press other than very general information; (SoF ¶ 18)
- files and reviews correspondence in the Mayor's office; (SoF ¶ 18) and
- keeps the Mayor's scheduling calendar. (SoF ¶ 18).

    Analyzing the aforementioned responsibilities under the test set out in *Galloza v. Foy. Galloza*, 389 F.3d at 29, it is clear that the Atherton could not be terminated from her employment as secretary on the basis of political discrimination. Atherton held a subordinate position, which did not entail significant supervision or control over other employees. The executive secretary is not a position that does have influence over programs or policy initiatives, nor could any such influence be reasonably inferred by the public. The position only involves handling or incidental contact with confidential or politically-sensitive materials. Merely incidental exposure to politically sensitive information or materials by nature of an employee's job, does not qualify the worker as a "confidential public employee" that is divested of constitutional protection from politically motivated firing. *Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 325-26 (1st Cir.1987). There is no indication that political affiliation should be a valid job requirement. In sum, the executive secretary position simply does not have any capacity

to influence the resolution of matters potentially subject to partisan political difference and thus, political affiliation is not an appropriate criterion for tenure. *See id.*; *Galloza*, 389 F.3d 26. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to Liability should be allowed.

IV.   CONCLUSION

Based on all of the foregoing reasons, including those enumerated in the Plaintiff's Motion for Summary Judgment as to Liability as well as Plaintiff's Opposition to Defendants' Motion for Summary Judgment, the Plaintiff respectfully requests that her Partial Summary Judgment as to Liability be awarded as to her claims for violations of due process under 42 U.S.C. § 1983 and for violations of her first amendment rights.

                                        Respectfully Submitted,

                                        CRYSTAL A. ATHERTON

                                        By her Attorney,

                                        /s/ Jordan L. Shapiro
                                        Jordan L. Shapiro
                                        BBO# 454240
                                        Shapiro & Hender
                                        640 Main Street
                                        Malden, MA 02148
DATED: April 30, 2008                (781) 324-5200